**William McKinley DAVIS, Jr., Appellant,**

v.

**UNITED STATES of America,
Appellee.**

No. 23983.

United States Court of Appeals
Fifth Circuit.

March 2, 1967.

Before GEWIN and AINSWORTH, Circuit Judges, and HUNTER, District Judge.

EDWIN F. HUNTER, Jr., District Judge.

Defendant was convicted by a jury on a charge of knowingly failing to submit to induction into the Armed Forces of the United States.[1] The indictment charged that he "* * * unlawfully, wilfully, and knowingly did fail and neglect to perform a duty required of him under and in execution of * * * the * * * Act * * * in that * * * [he] * * * did fail * * * to report for and submit to induction into the Armed Forces of the United States of America." He now appeals the judgment of conviction and commitment, asserting numerous contentions of error.

Ira De Ment, Montgomery, Ala., for appellant.

Ben Hardeman, U. S. Atty., J. O. Sentell, Asst. U. S. Atty., Montgomery, Ala., for appellee.

The sequence of events herein is decisive. The pertinent dates are as follows:

| | |
|---|---|
| October 16, 1962 | Davis registered with Local Board 37, Birmingham, Alabama. He did not sign the statement of conscientious objection to war. |
| November 18, 1963 | Local Board 37 classified Davis as 1A. No question is raised as to the basis in fact of that classification. |
| November 20, 1963 | Notice of Classification was mailed to him. This form contained notice to the registrant of his procedural right of personal appearance and appeal. He did not request either. |
| Mid-July, 1964 | Davis became a Muslim, a devotee of the Islamic religion. |
| September 21, 1964 | The local board mailed Davis a notice to report for a pre-induction physical on October 28, 1964. |
| October 28, 1964 | Davis reported for an armed forces physical examination and was found acceptable. Dur- |

---

1. 50 U.S.C.A. § 462, Appendix:

"§ 462. Offenses and penalties. (a) Any * * * person * * * who * * * evades * * * service in the armed forces or any of the requirements of this title * * * or of said rules, regulations, or directions, or who in any manner shall knowingly fail or neglect or refuse to perform any duty required of him under or in the execution of this title, or rules, regulations, or directions made pursuant to this title * * * shall, upon conviction * * * be punished by imprisonment * * *."

ing the course of the examination he stated that he told an Army lieutenant that he was a Black Muslim.[2] The lieutenant made a notation to that effect on a security check form.

| | |
|---|---|
| November 4, 1964 | Acceptability Notice was mailed to Davis and was not returned. |
| January 21, 1965) and ) June 3, 1965 ) | Current information questionnaires disclosed no change in status. |
| August 16, 1965 | Davis was ordered to report for induction on September 2, 1965. |
| September 2, 1965 | Davis reported and categorically refused to be inducted.[3] After leaving the induction center, he reported to the FBI office in Montgomery, and the FBI told him to report to his local board. He did so, and inquired about filing a claim of conscientious objection. |
| September 3, 1965 | After conversations with the U. S. Attorney, the local board permitted Davis to file a form seeking conscientious objector status. This was the first time that Davis had made any claim to his Board that he was a conscientious objector. |
| September 22, 1965 | At a regular Board meeting, Davis' file was reviewed. The classification was not reopened, and Davis was so notified. |
| February 8, 1966 | Davis was indicted by the Grand Jury. |
| April 20, 1966 | Davis was convicted. |

2. Davis testified that he also told the lieutenant he was opposed to participating in war. No such notation was made of record.

3. The factual context of Davis' refusal to be inducted is best described by Lt. Kraselysky in these words: "It was brought to my attention by Specialist Scott, who was at the station at the time, that he had said he was going to refuse induction, so we had him taken into the ceremonial room where the inductions are performed, and we—or rather I told him of the induction that was going to proceed; told him that I would call out his name, when he heard it he was to take one step forward, and that one step would constitute his induction into the armed forces. I called out—asked him did he understand that; he said yes. I called out his name; he did not step forward. Then I told him—asked him did he know that by refusing to step forward he was refusing induction into the armed forces and could thereby be subject to criminal proceedings of the sort and if convicted fined or imprisoned, and that I would call out his name again, and when he heard it he was to take one step forward; again, this step would constitute his induction. I called out his name again; he again refused to step forward. And I asked him, Are you refusing induction by refusing to step forward? He said he was. Then we took him out of the ceremony room, prepared a statement to the effect that he was refusing induction, which is according to our regulations, and requested that he sign this statement to the effect that he was refusing induction. I— we told him that he did not have to sign the statement, we were merely requesting it. He said no, he would not sign it, so he refused to sign. Then we took him outside the building, told him that he was free to go."

The record reveals that appellant did not claim conscientious objector status under 50 U.S.C.A. § 456(j), Appendix, until after his notice of induction had been mailed to him and until after he had unequivocally refused induction. Selective Service Regulation 1625.2 provides:

"§ 1625.2 When registrant's classification may be reopened and considered anew.

"The local board may reopen and consider anew the classification of a registrant * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; * * * provided * * * the classification of a registrant shall not be reopened after the local board had mailed to such registrant an Order to Report for Induction (SSS Form No. 252), unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control. 32 C.F.R. § 1625.2"

■ In seeking a reversal of his conviction, Davis argues that he presented a prima facie case to his local board for a conscientious 'objector's classification and that the record contains no evidence to rebut his claim. Thus, the fundamental assault on the conviction is that the exemption granted by the Act, 50 U.S.C.A. § 456(j) Appendix, contains no limitation upon the time for assertion of the exemption and that Selective Service Regulations setting forth time limitations cannot override the Act. There is some authority to uphold this view.[4] However, we hold, in accord with the great weight of authority, that the orderly allowance of the exemption requires reasonable rules for its invocation and that non-compliance therewith results in forfeiture of the exemption.[5]

■ It is argued with fervor that Davis was denied due process when the Board, after receiving his belated claim, considered the facts of his case and declined to reopen or reclassify. We cannot agree. The pertinent regulation categorically declares that the classification of a registrant shall not be reopened after an order to report for induction has been mailed unless there is a specific finding by the local board of "a change in the registrant's status resulting from circumstances over which the registrant had no control." (Emphasis ours). The Board found no such change of status. The validity of this regulation has been consistently upheld.[6] Belated development of conscientious objection is not a change in status beyond the control of registrant.[7] Decisions cited by appellant are on their facts so different from the circumstances of the present case that they have no persuasive value to us.[8]

4. United States v. Underwood, 151 F.Supp. 874 (N.D.Cal., 1955); United States v. Crawford, 119 F.Supp. 729 (N.D.Cal., 1954).

5. United States v. Al Majied Muhammad (4th Cir., 1966) 364 F.2d 223; United States v. Taylor (6th Cir., 1965), 351 F. 2d 228; United States v. Beaver (4th Cir., 1962), 309 F.2d 273, cert. denied Jan. 7, 1963, 371 U.S. 951, 83 S.Ct. 505; Keene v. United States (10th Cir., 1959), 266 F. 2d 378, 9 L.Ed.2d 499; Boyd v. United States (9th Cir., 1959), 269 F.2d 607; United States v. Schoebel (7th Cir., 1953), 201 F.2d 31.

6. United States v. Al Majied Muhammad, etc. (4th Cir., 1966), 364 F.2d 223; United States v. Taylor, (6th Cir., 1965), 351 F.2d 228; United States v. Porter (7th Cir., 1963), 314 F.2d 833; United States v. Beaver (4th Cir., 1962), 309 F. 2d 273, (cert. denied Jan. 7, 1963, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499); Keene v. United States (10th Cir., 1959), 266 F.2d 378; Boyd v. United States (9th Cir., 1959), 269 F.2d 607; United States v. Schoebel (7th Cir., 1953), 201 F.2d 31; Feuer v. United States (9th Cir., 1953), 208 F.2d 719.

7. Porter v. United States, 334 F.2d 792; United States v. Schoebel, 201 F.2d 31.

8. Olvera v. United States (5th Cir., 1955), 223 F.2d 880, is clearly distinguishable since there the conscientious objector claim was made before the induction notice was sent and when he first registered. This was also true in Williams v. United States (5th Cir., 1954), 216 F.2d 350.

■ Appellant also assigns as error the action of the United States Attorney in exercising peremptory challenges so as to exclude from the jury three Negro veniremen who were otherwise qualified to serve. This action, it is argued, constitutes a denial of due process and equal protection of the laws. The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the Court's control. If peremptory challenges may be exercised only in a certain way, depending on circumstances, then they are not really peremptory. We are aware of the admonition in *Swain* [9] that systematic use of the peremptory challenge to exclude Negroes in "case after case" may be improper. No such claim is made here and what the Supreme Court said there regarding the striking of Negroes in a particular case is pertinent here:

"With these considerations in mind, we cannot hold that the striking of Negroes in a particular case is a denial of equal protection of the laws. In the quest for an impartial and qualified jury, Negro and white, Protestant and Catholic, are alike subject to being challenged without cause. To subject the prosecutor's challenge in any particular case to the demands and traditional standards of the Equal Protection Clause would entail a radical change in the nature and operation of the challenge. The challenge, pro tanto, would no longer be peremptory, each and every challenge being open to examination, either at the time of the challenge or at a hearing afterwards. The prosecutor's judgment underlying each challenge would be subject to scrutiny for reasonableness and sincerity. And a great many uses of the challenge would be banned.

"In the light of the purpose of the peremptory system and the function it serves in a pluralistic society in connection with the institution of jury trial, we cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case."

There remains the contention that the District Judge declined to consider Davis for probation. Our appreciation of the record is that the trial court did consider the probationary reports, but for good reasons and in good conscience did not see fit to place defendant on probation. This the Court had a perfect right to do.

■■ A valid order to report for induction imposed upon appellant a duty to submit to induction.[10] The issue submitted to the jury was whether he wilfully and knowingly refused to perform that duty. Having heard the evidence, the jury resolved that issue of fact adversely to appellant. There is ample evidence to support the jury's finding. Appellant was given a fair trial free of prejudicial error. We are without any basis to disturb either the verdict or the sentence.

The Court is grateful to Honorable Ira De Ment of the Montgomery Bar, who represented defendant as appointed counsel, for his able and dedicated efforts in behalf of his client.

Judgment affirmed.

---

9. Swain v. State of Alabama (1964), 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed. 759.

10. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428.