UNITED STATES of America,
Appellee,

v.

John Steven RUNDLE, Appellant.

No. 19573.

United States Court of Appeals
Eighth Circuit.

July 8, 1969.

Lawrence Le Tourneau, of Jesse, Le Tourneau & Johnston, Des Moines, Iowa for appellant and filed brief.

Allen L. Donielson, U. S. Atty., Des Moines, Iowa, for appellee, Claude H. Freeman, Asst. U. S. Atty., was on the brief with Allen. L. Donielson, Des Moines, Iowa.

Before BLACKMUN, MEHAFFY and LAY, Circuit Judges.

LAY, Circuit Judge.

This is an appeal from a jury-waived conviction under 50 U.S.C. App. § 462 for wilfully refusing induction into the Armed Forces of the United States. Defendant's main contention is that his order to report for induction was void by reason of the local draft board's refusal to reopen his I-A classification and cancel his induction order at a time when he had furnished the board evidence that he was "satisfactorily pursuing a full-time course of instruction" as an undergraduate at Iowa State University.

The district court found no prejudicial error by reason of the board's failure to reopen the defendant's classification because his school quarter would have ended in a few days and his status would then have had to be changed. The district court also found that the defendant failed to cooperate with the local board by furnishing additional information concerning his schooling and that the defendant further voluntarily terminated his school studies after the spring quarter. Under these circumstances, the district court held that the defendant had not been prejudiced. We reverse.

The board must function according to statutory requirements and the administrative regulations governing its procedure. Simmons v. United States, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453 (1955). Congress has provided:

"Any person who while satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution is ordered to report for induction under this title, shall, upon the facts being presented to the local board, be deferred (A) until the end of such academic year, or (B) until he ceases satisfactorily to pursue such course of instruction, whichever is the earlier * * *." 50 U.S.C. App. § 456(i) (2).

See also 32 C.F.R. § 1622.15(b). Under the Selective Service Regulations it is *mandatory* for the board to "reopen and consider anew the classification of a registrant to whom it has mailed an Order to Report for Induction * * * whenever facts are presented to the local board which establish the registrant's eligibility for classification into Class I-S because he is satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution of learning." 32 C.F.R. § 1625.3(b). Under 32 C.F.R. § 1625.14, when the board *reopens* a classification, it must cancel any pending order to report for induction.

On January 11, 1967, the draft board reclassified Rundle as I–A(3) (available for military service) from a II-S (student deferment) because the board had been notified by the University that Rundle was no longer in school. On January 25, Rundle reported that he was still registered in school. On February 13, 1967, the board received notice from the University by Form 109 stating Rundle was a full-time student. This was sufficient request and notice to cause a reclassification of Rundle from I-A to II-S. 32 C.F.R. § 1622.25. John

Rundle had first enrolled at the University in September of 1963. Subsequently he had been reclassified four different times to a II-S through use of the Form 109 certifying Rundle was satisfactorily pursuing his course of instruction. Although the specific facts are not clear, Rundle had frequently been delinquent in his tuition payments for various reasons and this had caused a breakdown in the University's timely certification of his active pursuit of study. In each instance these had been corrected, certification had been made and the board's change of classification from I-A(3) to II-S had been accomplished. However, notwithstanding the certification by the University on February 13, 1967, the board did not reclassify him II-S.

On April 4, 1967, the board received another Form 109, again saying Rundle was no longer enrolled. However, the board did not investigate further, because of their prior classification of I-A, pending since January 11, 1967. On May 5, 1967, Rundle received his notice to report for induction on June 28, 1967. On May 8, 1967, Rundle informed the board he was still in school and that because of sickness he had not paid his tuition on time but was attending classes. The board informed him that it would be necessary to have the University certify that he was properly enrolled and they would then recommend a *postponement* of induction.[1] He told the board he would graduate in August of 1967. He also informed the board he was going into the Peace Corps in September.

Significantly, Rundle's Selective Service file then shows a call by the board's secretary to the Registrar's office dated May 9, 1967. The file relates:

"Per telecon Mrs. Springer, Registrar's ofc., ISU, registrant did not pay his spring qtr. fees until 5 May. Dead-line for paying fees was March 8. She says he registered for 12-hrs. & claimed that he has been attending classes even tho he was not registered & had not paid fees. *She stated* that she had left word at his home for him to return to their office for further info & *that she would not send a SSS 109 until his situation there is cleared up. Said it will have to be determined if he has been attending classes & if he will get full academic credits for this quarter.*" (Emphasis ours.)

On May 12, three days after this call, the University notified the board by Form 109 that Rundle was a full-time student. We conclude that at least in the circumstances of this case, the University's certification was sufficient to establish under 32 C.F.R. § 1625.3(b) that Rundle was in fact "satisfactorily pursuing" his schooling. United States ex rel. Berman v. Craig, 207 F.2d 888 (3 Cir.1953). As the government concedes in its brief:

"Some local boards would have no communication with the college administration and perhaps while a Form 109 is not the ultimate in proof of 'satisfactorily pursuing,' it would certainly be reasonable to use it as some evidence of satisfactory enrollment."

More significantly, there is no dispute that Rundle was in fact attending school and was in fact eligible under § 1625.-3(b) for a I-S deferment at that time.

On June 9, the board attempted to get further information from the registrant as to his credit hours then completed, the expected date of his graduation, and a verification of his enrollment in the summer session. On June 19, the board called the University and ascertained that Rundle was no longer enrolled and had not authorized the University to release any further information as to his credits. Such investigative procedures

---

1. A postponement of induction would also fail to meet the requirements of 32 C.F.R. §§ 1625.3(b) and 1625.14. There is a substantial difference between cancellation of induction as required by these sections and mere postponement of induction. See Davis v. United States, 410 F.2d 89, (8 Cir. 1969).

were within the prerogative of the board and certainly, the board was in good faith in attempting to verify this information.

■ However, in view of the fact that the evidence conclusively shows that at the time Rundle received his induction order in May, he was pursuing his education and upon certification of that fact to the board under 32 C.F.R. § 1622.15(b) and the statute 50 U.S.C. App. § 456(i) (2)[2] the board was nonetheless required to *reopen* and *reconsider* his I-A classification and cancel his induction order. 32 C.F.R. § 1625.14. See United States ex rel. Berman v. Craig, 207 F.2d at 890 (3 Cir.1953). To hold otherwise would be to permit a board to disregard a mandatory duty to reopen by simply delaying consideration until the registrant's status has changed sufficiently so that he is no longer entitled to the requested reclassification. Indeed, a board's delay might in itself cause a change in a registrant's status. The local board's delay, coupled with both its evident reluctance to grant a I-S classification and the outstanding induction order might well have caused Rundle to conclude that registration for summer school was a futile act. For the same reason, Rundle's subsequent withdrawal of his request for a I-S deferment on June 23 and his application then to be considered for a I-A-O status cannot affect the board's mandatory duty under the regulations to reopen and consider anew his classification.

The reopening and reconsideration of a classification have significance independent of the reclassification itself. This was recognized in Miller v. United States, 388 F.2d 973 (9 Cir.1967), where Senior Circuit Judge Harvey Johnsen

---

2. In Ellis v. Hershey, 302 F.Supp. 347 (E. D.Mich. April 30, 1969), second year law students brought a class action seeking injunctive relief from the board's refusal to grant them I-S deferments under § 456(i) (2). Judge Kaess granted the injunction and wrote:

"Several of the plaintiffs have passed their pre-induction physical examinations and have been called for induction. They have requested I-S deferments, which requests have been denied. These plaintiffs claim an immediate right to such deferments. The other plaintiffs, comprising the remainder of the class, are not so far along in the induction process, but are allegedly being injured in their ability to properly plan and pursue their academic careers by the Selective Service System's refusal to recognize their right to I-S deferments should they be called for induction during the academic year.

"All of the plaintiffs have exhausted their administrative remedies within the Selective Service System on this issue. * * *

* * * * *

"Section 456(i) (2) contains the phrase 'shall * * * be deferred.' Webster's New Collegiate Dictionary defines the word 'shall' as meaning *obliged, must.* The phrase employed by Congress in subsection (i) (2) is mandatory in meaning. This court, or any court, would be stretching the intent and purpose of Congress in construing Section 456(i) (2) differently. Section 456(i) (2) of the Act in clear and unequivocal terms mandates the deferment until the end of the academic year of plaintiffs and those similarly situated when they are called for induction, so long as they remain full-time students.

* * * * *

" * * * The language of a statute is the best and most reliable index of its meaning and where the language is clear and unequivocal it is determinative of its construction. Monte Vista Lodge v. Guardian Life Ins. Co. of America (C.A. 9, 1967), 384 F.2d 126, cert. den. 390 U.S. 950, 88 S.Ct. 1041, 19 L.Ed.2d 1142.

"The court's construction of Section 456, subsection (h) (1), (h) (2) and (i) (2) follows directly from the statute's clear unequivocal language. No ambiguity exists in the statutory language and there is no conflict between the respective sections.

* * * * *

"Therefore, since plaintiffs have a clear statutory right to an I-S deferment, not subject to Local Board discretion, the court finds that Section 460 (b) (3) of the Act is not a bar to its jurisdiction. Plaintiffs have a clear and unequivocal right to a statutory I-S classification until the end of the academic year, June 1969."

held that the local board had erred in refusing to reopen a classification when it had "shortcut the situation, without purporting to reopen," by proceeding directly to a consideration on the merits of the probative elements in the registrant's file. Noting that the board had thereby eliminated the registrant's rights to appear personally and to appeal, Judge Johnsen stated:

"For a local board to be able to effect a discrimination of such substance * * * would seem to us to constitute a matter of basic unfairness and hence to be, in the language of Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884, and Schneider v. Rusk, 377 U.S. 163, 168, 84 S.Ct. 1187, 1190, 12 L.Ed.2d 218, 'so unjustifiable as to be violative of due process.'" Id. at 976–977.

 Failure to follow administrative procedures for reopening classification has been consistently held to be a violation of due process. Davis v. United States, 410 F.2d 89 (8 Cir. 1969); United States v. Freeman, 388 F.2d 246 (7 Cir.1967); Miller v. United States, 388 F.2d 973 (9 Cir.1967); Olvera v. United States, 223 F.2d 880 (5 Cir.1955). The argument that Rundle was not "prejudiced" by the failure to do so is unavailing. The evidence of prejudice is conclusive here.

First, at the time of May 12, 1967, Rundle wanted to finish his education and obtain his degree. He anticipated graduating in August of 1967. Since his course of study had commenced in September, his "academic year" would properly extend to September of 1967 which would have allowed Rundle time to complete his credits to graduate, and not just until the end of May as the trial court reasoned. This definition is now established by administrative regulation:

"In determining eligibility for deferment in Class II-S, a student's 'academic year' shall include the 12-month period following the beginning of his course of study." 32 C.F.R. § 1622.-25(b) (effective July 1967).[2a]

Secondly, by refusing to reopen Rundle's classification under § 1625.3(b), he has been deprived of his right to a personal appearance before the board (32 C.F.R. § 1624.1) and the right to appeal to the state board (32 C.F.R. § 1626.2). As the Court of Appeals for the Second Circuit noted in United States v. Vincelli, 215 F.2d 210, 213 (2 Cir.1954):

"These are substantial rights and the board's procedure in this instance by depriving appellant of them, was a denial of due process. * * *."

See also Miller v. United States, 388 F. 2d 973 (9 Cir.1967); Stain v. United States, 235 F.2d 339 (9 Cir.1956); United States ex rel. Berman v. Craig, 207 F.2d 888 (3 Cir.1953).

Finally, if the board had reopened his classification, his order of induction would have been cancelled. 32 C.F.R. § 1625.14. Five days before Rundle was to report for induction he applied for a I-A-O classification. In such circumstances his burden to obtain a reopening for consideration to qualify as a I-A-O would have been significantly less where no valid induction order was outstanding. He would only have had to make a prima facie showing of such a change in status. 32 C.F.R. § 1625.2. See Vaughn v. United States, 404 F.2d 586 (8 Cir. 1968). However, after an induction or-

**2a.** Under § 1622.25 a student who completes his requirements for his bachelor degree will, of course, lose his II-S deferment as an undergraduate. The definition of a twelve month "academic year" is provided as a supplement to § 1622.25 (c) which allows a student to pursue a four-year course of study by earning 25% of the credits required for his degree each year. Thus, a student who attends school for the regular nine-month school year is still eligible for the deferment, although he might work during the summer and not actually attend classes until the start of his next fall semester.

der has been issued and not otherwise cancelled, his burden to obtain a change in classification concededly is much greater, since he must then show "circumstances over which [he] had no control." 32 C.F.R. § 1625.2(b). See Davis v. United States, supra.

Denial of procedural and substantive rights cannot be justified by subsequent events. Cf. United States v. Freeman, 388 F.2d 246, 250 (7 Cir.1967.) Had these rights—the reopening of his classification and the attendant cancellation of his induction order—been afforded the registrant, no one can predict what subsequent events might have turned out to be. However, we need not theorize about such possible events, for as stated in United States v. Simmons, 348 U.S. 397 at 406, 75 S.Ct. 397 at 402, 99 L.Ed. 453.

"Petitioner has been deprived of * * * a fundamental safeguard, and he need not specify the precise manner in which he would have used this right—and how such use would have aided his cause—in order to complain of the deprivation."

The defendant also alleges that he was denied due process by the board's failure to meet formally and consider his application for a I-A-O classification. The board rejected Rundle's I-A-O application as not timely filed, without a meeting, by telephone vote, since Rundle's induction order had already been issued. We do not need to pass upon the board's action here in view of our reversal on other grounds.[3] However, the true significance of this rejection is that if the induction order had been properly recalled by reason of the I-S reclassification in May, at a time Rundle was clearly entitled to it, it is conceded the board would properly have had to consider by formal meeting and quorum vote whether the defendant had made a prima facie showing for a I-A-O status. 32 C.F.R. §§ 1604.52a(d) and 1625.2. See United States v. Walsh, 279 F.Supp. 115 (D. Mass.1968).

Judgment reversed, with directions to enter a verdict of acquittal.

BLACKMUN, Circuit Judge (concurring).

I am not convinced that this registrant is not justly to be suspected of abusing the registration process. His "on again, off again" matriculation record; his lack of cooperation in supplying his Local Board with information pertinent for his appropriate classi-

3. The courts of appeals have divided on the issue of whether an application for conscientious objector classification filed after an induction order has issued can be rejected summarily on the ground that reclassification under 32 C.F.R. § 1625.2 (b) requires "a change of circumstances over which the registrant has no control." One view is that a belated claimed status of conscientious objector does not qualify. United States v. Jennison, 402 F.2d 51 (6 Cir. 1968); Davis v. United States, 374 F.2d 1 (5 Cir. 1967); United States v. Al-Majied Muhammad, 364 F.2d 223 (4th Cir. 1966); United States v. Schoebel, 201 F.2d 31 (7 Cir. 1953). The Second and Tenth Circuits and a divided panel of the Ninth follow what has been called the "crystallization" theory and require the board nevertheless to give formal consideration to reopening the classification. United States v. Gearey, 368 F.2d 144 (2 Cir. 1966);

Keene v. United States, 266 F.2d 378 (10 Cir. 1959); Ehlert v. United States, 416 F.2d 1012 (9 Cir. 1968) (en banc rehearing pending decision). Cf. Boswell v. United States, 390 F.2d 181 (9 Cir. 1968). This Circuit has not directly decided the question. However, see, Davis v. United States, 410 F.2d 89 (8 Cir. 1969), where we said:

"Undoubtedly, where a registrant presents a claim for conscientious objector status when his induction is imminent and when he has already been deferred for other reasons, the board is likely to view his claim and motives with considerable suspicion. Yet moral and religious values are subject to change, particularly as a young man reaches and enters maturity. There is little likelihood that such a person can be afforded a fair hearing without being allowed to personally present his claim." Id. at 94.

fication; and his last minute assertion of conscientious objector status, which he himself characterizes as "very much a last minute decision, and as such its sincerity is suspect", a claim presented, apparently, when all else failed him, afford grounds for such suspicion.

Nevertheless, because on the facts we seem to have a mandatory reopening situation here, and because Rundle thus has a technical defense which a more conscientious registrant would not bother with, I am constrained to concur in the result. Rundle will then be able to present whatever case he may feel he possesses and the process will begin all over again, with a conclusion not known at this time.

Until we have some definitive authority to that effect, I do not join Judge Lay in his apparent observation that because a student originally matriculates in one September his fourth and final "academic year," ordinarily expected to end in the fourth spring after the original September matriculation, nevertheless must necessarily extend to another September. I would have thought that the normal spring graduation was a conclusion, or a beginning of something new, and that that is what "Commencement" is all about. I suspect many young men, who graduate on one day and who then, soon, are on their way to basic training, would be surprised to discover that their academic year persists. It is interesting to note that a district judge's opinion, which Judge Lay quotes at length in his second footnote, pinpoints a June graduation as the end of the fourth academic year.

MEHAFFY, Circuit Judge (dissenting).

I would affirm the judgment of conviction based primarily on the facts as summarized and the reasoning of the district court in its memorandum opinion.