Perry Michael WAGUESPACK, Plaintiff,

v.

Curtis W. TARR, National Director of Selective Service; Lieutenant General David Wade, State Director of Selective Service; Selective Service Local Board No. 136, Lutcher, Louisiana; Selective Service Local Board No. 99, Baton Rouge, Louisiana, Defendants.

Claude Theodore GRAVOIS, Jr., Plaintiff,

v.

Curtis W. TARR, National Director of Selective Service; Lieutenant General David Wade, State Director of Selective Service; Selective Service Local Board No. 57, Lutcher, Louisiana; Selective Service Local Board No. 99, Baton Rouge, Louisiana, Defendants.

Civ. A. Nos. 70–1715, 70–1716.

United States District Court,
E. D. Louisiana,
New Orleans Division.

Sept. 21, 1970.

M. Stephen Roberts, Baton Rouge, La., for plaintiffs.

James Carriere, Asst. U. S. Atty., New Orleans, La., for defendants.

CASSIBRY, District Judge:

Perry Michael Waguespack and Claude Theodore Gravois, Jr., seek preliminary and permanent injunctions restraining the defendants from enforcing orders to report for military induction and writs of mandamus compelling their local board to reclassify them in Class I-S.[1]  Plaintiffs contend they have

---

1. Class I–S applies to graduate and undergraduate college students who receive orders to report for induction while attending school full time. The deferment is effective until the end of the student's current academic year.

been unlawfully denied the I-S classification and have continued under orders to report for induction contrary to the mandatory language of Section 6(i) (2) of the Selective Service Act of 1967.[2] Plaintiffs allege that they met all of the qualifications set forth in Section 6(i) (2) entitling them to I-S classification and were not barred by any of the exceptions thereto.[3]

2. The first clause of Section 6(i) (2) of the Selective Service Act of 1967, 50 U.S.C.App. § 456(i) (2), provides that:
    "Any person who while satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution is ordered to report for induction under this title, shall, upon the facts being presented to the local board, be deferred (A) until the end of such academic year, or (B) until he ceases satisfactorily to pursue such course of instruction, whichever is the earlier: * * *."

3. There are four exceptions to the right to deferment granted by the first clause of 6(i) (2). Three of these are found in the provisos of 6(i) (2):
    " * * * Provided, That any person who has heretofore had his induction postponed under the provisions of section 6(i) (2) of the Selective Service Act of 1948 [former subsection (i) (2) of this section] ; or any person who has heretofore been deferred as a student under section 6(h) of such Act [former subsection (h) of this section]; or any person who hereafter is deferred under the provision of this subsection, shall not be further deferred by reason of pursuit of a course of instruction at a college, university, or similar institution of learning except as may be provided by regulations prescribed by the President pursuant to the provisions of subsection (h) of this section. Nothing in this paragraph shall be deemed to preclude the President from providing, by regulations prescribed under subsection (h) of this section, for the deferment from training and service in the Armed Forces or training in the National Security Training Corps of any category or categories of students for such periods of time as he may deem appropriate."
    None of these three provisos apply to the plaintiffs in this case. Neither plaintiff has ever had his induction postponed under the Selective Service Act of 1948.

I.

Plaintiffs received undergraduate II-S deferments under the Selective Service Act of 1951 during four years of college. They received their baccalaureate degrees prior to July 1, 1967, and commenced post-baccalaureate work to obtain masters degrees in September 1967. During the fall of 1967 they received II-S graduate deferments under paragraph 6(h) (2) of the 1967 Act.[3A] In

Nor have plaintiffs ever been deferred as students under the 1948 Act. Finally, neither plaintiff has ever previously held a I–S deferment.

The fourth exception is found in Paragraph 6(h) (1) of the 1967 Act, which provides that:
    " * * * No person who has received a student deferment under the provisions of this paragraph shall thereafter be granted a deferment under this subsection, nor shall any such person be granted a deferment under subsection (i) of this section if he has been awarded a baccalaureate degree, except for extreme hardship to dependents (under regulations governing hardship deferments), or for graduate study, occupation, or employment necessary to the maintenance of the national health, safety, or interest. * * *"
Again, this exception is not applicable to plaintiffs because they have never received a student deferment under its terms.

3A. Section 6(h) (2) of the Selective Service Act of 1967, 50 U.S.C.App. § 456(h) (2), provides in part:
    "Except as otherwise provided in this subsection the President is authorized, under such rules and regulations as he may prescribe, to provide for the deferment from training and service in the Armed Forces of any or all categories of persons whose employment in industry, agriculture, or other occupations or employment, or whose continued service in an Office (other than an Office described in subsection (f)) under the United States or any State, territory, or possession, or the District of Columbia, or whose activity in graduate study, research, or medical, dental, veterinary, optometric, osteopathic, scientific, pharmaceutical, chiropractic, chiropodial, or other endeavors is found to be necessary to the maintenance of the national health, safety, or interest: * * *."

June 1968 Waguespack was reclassified I-A. In November 1968 Gravois was reclassified I-A. From September 1968 until the present time plaintiffs have been enrolled as full-time graduate students and certified by their school as satisfactorily pursuing full-time courses of instruction toward masters degrees.[3B] Plaintiffs' academic year commenced in September 1968 and, under applicable law, extended for a twelve-month period until September 1969.[4] During that academic year plaintiffs were ordered to report for induction on August 19, 1969. Although they were denied I-S classifications, their inductions were postponed and they continue under orders to report for induction.

## II.

Defendants question the court's jurisdiction to entertain a preinduction review of plaintiffs' selective service classifications in view of Section 10(b) (3) of the 1967 Selective Service Act, 50 U.S.C. App. § 460(b) (3), which provides:

"No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title, after the registrant had responded either affirmatively or negatively to an order to report for induction * * *."

While Section 10(b) (3) read literally appears to deny all preinduction judicial review, the Supreme Court has held that it cannot preclude review of draft board actions which are outside the statutory scheme or involve a capricious violation of a statutory mandate. Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L. Ed.2d 402 (1968). Although *Oestereich* dealt with a statutory exemption, Breen v. Selective Service Local Board No. 16, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970) extended *Oestereich* to statutory deferments. In addition, preinduction review has been granted or approved in a series of decisions relating to the I-S deferment under Section 6(i) (2) of the Act, the precise issue in this case. In the overwhelming majority of

---

**3B.** At the time this suit was filed both plaintiffs were registered for the summer session at Louisiana State University. The record shows, however, that Waguespack is currently enrolled "for degree only", having apparently completed his degree requirements in May 1970. The Government would thus distinguish the two cases and deny Waguespack a I-S classification because he is no longer "satisfactorily pursuing a full-time course of instruction." This is really an argument that Waguespack's case is moot, with which this court does not agree. See text of this opinion at Part III, *infra*.

**4.** Section 6(i) (2) of the 1967 Selective Service Act provides that the deferment granted thereunder is effective until the end of the "academic year". The only definition of the term "academic year" is found in Selective Service Regulation § 1622.25(b), 32 C.F.R. § 1622.25(b), as " * * * the 12 month period following the beginning of his course of study." This definition, although pertaining to II-S classifications, has been applied to I-S deferments. See United States v. Rundle, 413 F.2d 329, 333 (8th Cir.

1969) ; Walsh v. Local Board No. 10, 305 F.Supp. 1274, 1278 (S.D.N.Y.1969). In Robinson v. Hershey, 2 SSLR 3191 (7th Cir. July 14, 1969) the Court rejected the application of the regulation's definition to a I-S deferment and held that the registrant's "academic year", which had begun in September 1968, ended in June 1969. But the Court pointed out that Robinson was "enrolled in *unspecified courses* during the summer session following completion of the normal academic year." (Emphasis added.) In this case, the record shows that both plaintiffs were full-time graduate students pursuing their regular graduate program during the summer of 1969. I find that their academic year which began in September 1968 did not end until September 1969. This conclusion is also supported by the theory announced by the Court in *Nestor* which would apply:

"a flexible concept of 'academic year' based upon the circumstances of the particular case and aimed at effectuating the essential purpose of the I-S deferment to avoid the hardship and waste involved in the interruption of an academic year once begun." 425 F.2d at 523, footnote 28.

actions brought to compel reclassification under this Section the courts have held that the language of Section 6(i) (2) is mandatory and that preinduction review is available to contest the denial of a I-S deferment contrary to such mandate. Bowen v. Hershey, 410 F.2d 962 (1st Cir. 1969); Crane v. Hershey, 410 F.2d 966 (1st Cir. 1969); Marsano v. Laird, 412 F.2d 65 (2d Cir. 1969); Carey v. Local Board No. 2, 412 F.2d 71 (2d Cir. 1969); Foley v. Hershey, 409 F.2d 827 (7th Cir. 1969); Nestor v. Hershey, 425 F.2d 504 (D.C. Cir. 1969); Armendariz v. Hershey, 295 F.Supp. 1351 (W.D. Tex. 1969), aff'd 413 F.2d 1006 (5th Cir. 1969).[5]

■ Plaintiffs claim they were denied mandatory deferments under the Selective Service Act of 1967. This matter is subject to judicial review irrespective of Section 10(b) (3) of the Act.

5. Contra: Rich v. Hershey, 408 F.2d 944 (10th Cir. 1969). The court in *Rich* actually considered the merits of the case by finding that the plaintiff was not entitled to a I-S deferment and holding, therefore, that preinduction review was unavailable because the deferment was not statutorily mandated. The Court's action makes it clear that if the plaintiff had been found to be entitled to the deferment, review would have been available.

6. In *Nestor* the Court observed that:
"* * * It was with these rights in mind that Congress in 1951 changed Section 6(i) (2), which only postponed induction until the end of the academic year so as to provide actual deferment.

An important collateral right inherent in the I-S classification and the resulting deferment is the registrant's right to have his classification reopened upon the presentation of new facts. And, '[t]he reopening and reconsideration of a classification have significance independent of the reclassification itself.' United States v. Rundle, 413 F.2d 329, 332 (8th Cir. 1969). Under Selective Service Regulation No. 1625.2, the local board may reopen a registrant's classification if it is presented with facts not considered when the registrant was classified and which would justify a change in classification. 32 C.F.R. §

## III.

■ The Government has argued that the issues presented in the cases *sub judice* are moot. As understood, the Government's argument is that since the 1968–69 academic year has ended the issues before the court are now moot.

If the plaintiffs have an unequivocal right to I-S deferments, their local draft board could not deny them that right and instead merely postpone induction. The prime purpose of the I-S deferment is to prevent disruption of studies in the midst of an academic year. However, the fact that plaintiffs have had their inductions postponed beyond the 1968–69 academic year does not mean that they should not be granted I-S deferments. "[T]here are many collateral rights which attach to the granting of a deferment which are lost if induction is only postponed." Nestor v. Hershey, *supra*, 425 F.2d at 524.[6]

1625.2. But if the registrant has not been deferred by a I-S classification, and there is an outstanding induction order, the operation of which has merely been postponed, the board may reopen only if such facts represent a change in the registrant's status 'resulting from circumstances over which the registrant had no control.' 32 C.F.R. § 1625.2. Thus a registrant who was improperly denied a I-S classification or whose appeal was dismissed as moot would essentially lose his right to a II-A occupational deferment since the board could find that the obtaining of the employment was not beyond his control. Similarly, entering medical school could be deemed by the local board to be an act within the registrant's control so that eligibility for a graduate II-S could depend upon whether there was an outstanding induction order. Furthermore, Congress made the change from postponement to deferment in 1951, and reaffirmed it in the 1967 Act, primarily to provide students with 'an opportunity to enlist in a branch of service of their choice during such deferment period.' H.R.Rep.No.271, 82d Cong., 1st Sess., 2 U.S.Code Cong. & Admin.Serv. 1472, 1500 (1951). The purpose of this legislative change will be frustrated if this case is held to be moot.

The second important collateral right which attaches to a I-S deferment is

The basis of plaintiffs' suits is that they were denied mandatory I-S deferments when they were ordered to report for induction in August 1969, that their present I-A classifications are therefore unlawful, and that any orders to report for induction based upon those classifications are illegal and without effect. I cannot accept the Government's contention that the issues are moot.[7]

## IV.

■ The right to be deferred until the end of the current academic year is dictated by the clear and unambiguous language of Paragraph 6(i)(2) of the 1967 Act, which provides, *inter alia,* that:

"Any person who while satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution is ordered to report for induction under this title, *shall,* upon the facts being presented to the local board, *be deferred* (A) *until the end of such academic year,* or (B) until he ceases satisfactorily to pursue such course of instruction, whichever is the earlier: * * *." (Emphasis added.)

Therefore, "[u]pon the objective fact of full-time attendance at a university

the right of reclassification as I–A upon expiration of the I–S deferment and before an induction order can be issued. This procedure, of course, affords the registrant the concommitant rights of personal appearance and appeal to the state appeal board and possibly to the Presidential Appeal Board. See 32 C.F.R. §§ 1624–1627. 'These are substantial rights and the board's procedure in this instance by depriving the appellant of them, was a denial of due process * * *' United States v. Vincelli, 215 F.2d 210, 213 (2d Cir. 1954)."

7. The Government urges that Armendariz v. Hershey, 295 F.Supp. 1351 (W.D.Tex. 1969), aff'd 413 F.2d 1006 (5th Cir. 1969) makes the issues in this case moot. In *Armendariz* the District Court accorded the plaintiff-registrant full relief. The Government appealed and the Fifth Circuit, affirming the District Court, said that the appeal was moot because the academic year had ended and the plaintiff had been granted full relief. The Government had lost its case regardless of the Court's decision on appeal; the substantive issues were truly moot. In the instant case, however, the issues are in no sense moot; see text of this opinion, Part III and footnote 6, supra.

While *Armendariz* is thus easily distinguishable, I find Green v. Hershey, 302 F.Supp. 43 (N.D.Tex.1969), appeal dismissed 422 F.2d 1319 (5th Cir. 1970), more on point. In *Green* the District Court on June 11, 1969, denied relief to a registrant in plaintiffs' position. Green alleged that his academic year would end with his graduation in December 1969. On appeal, in a brief filed on October 27, 1969, Green did not discuss the question of mootness. The Government, in a reply brief filed on November 24, 1969, did raise the issue of mootness and contended that Green's academic year had in fact ended in August 1969 and that the appeal was therefore moot because Green's induction had been stayed beyond that time. On January 30, 1970, in a short *per curiam* opinion, the Fifth Circuit dismissed Green's appeal as moot because his academic year ended in December 1969. But a reading of Green's brief to the Fifth Circuit shows that he did not seriously urge upon the Court the importance of the procedural rights afforded by deferment rather than postponement. [See footnote 6, *supra.*] In fact, Green did not even mention the question of mootness in his brief. "There is no indication that the Court considered anything more than the obvious fact that the academic year was over and that the registrant had not yet been inducted." Nestor v. Hershey, *supra.* This case is quite different in that respect. The plaintiffs here vigorously urge that the issues are not moot and have thoroughly briefed the issue of mootness for the Court. Accordingly, *Green* is not controlling in this case. I do not think that the Fifth Circuit meant *Green* to allow local draft boards to defy the mandate contained in Section 6(i)(2) of the Selective Service Act by merely postponing induction past the end of the academic year. As the Court in *Nestor* stated:

"* * * there are many collateral rights which attach to the granting of a deferment which are lost if induction is only postponed. It was with these rights in mind that Congress in 1951 changed Section 6(i)(2), which only postponed induction until the end of the academic year, so as to provide actual deferment." 425 F.2d at 524.

being presented to it, the local board 'shall' defer the registrant until the end of the academic year or until he ceases satisfactorily to pursue his course of study, whichever is earlier. The board places such a registrant in Class I-S * * *." Nestor v. Hershey, *supra*, 425 F.2d at 513.

Five Circuit Courts have considered the question of the proper construction to be given Paragraph 6(i) (2) in cases involving registrants in plaintiffs' position. Four Circuits have held that Section 6(i) (2) mandates a I-S deferment for such registrants. Bowen v. Hershey, *supra*; Crane v. Hershey, *supra*; Marsano v. Laird, *supra*; Carey v. Local Board No. 2, *supra*; Foley v. Hershey, *supra*; Nestor v. Hershey, *supra*.[8] The Tenth Circuit, in Rich v. Hershey, 408 F.2d 944 (10th Cir. 1969), has taken a contrary view. This Court expressly adopts the reasoning of the majority courts, especially those reasons so ably articulated in *Nestor*.

The plaintiffs met each of the requirements for the I-S classification established by the first clause of Paragraph 6(i) (2). They had been satisfactorily pursuing full-time courses of instruction at Louisiana State University and Agricultural and Mechanical College at Baton Rouge, Louisiana, and they had been ordered to report for induction. These facts were presented to their local draft board. None of the four exceptions or qualifications to the right to a I-S deferment are applicable to plaintiffs.[9] I hold that plaintiffs were unlawfully denied the deferments to which they were entitled.

Therefore, IT IS ORDERED that:

1. Selective Service Local Board No. 57, Lutcher, Louisiana, shall forthwith upon receipt of a copy of this order reclassify plaintiffs Perry Michael Waguespack and Claude Theodore Gravois, Jr., in Class I-S as of August 8, 1969, the date upon which plaintiffs were entitled to such deferment;

2. Curtis W. Tarr, as National Director of Selective Service; Lieutenant General David Wade, as State Director of Selective Service; Selective Service Local Board No. 57, Lutcher, Louisiana; and Selective Service Local Board No. 99, Baton Rouge, Louisiana, are hereby enjoined from inducting plaintiffs Perry Michael Waguespack and Claude Theodore Gravois, Jr. into the Armed Forces of the United States until this reclassification order is complied with.

It is so ordered.

---

8. See also: Armendariz v. Hershey, *supra* note 7; United States v. Rundle, 413 F.2d 329 (8th Cir. 1969).

