UNITED STATES of America,
Plaintiff,

v.

James Allan LEVIN, Defendant.

No. 5–70 CR. 21.

United States District Court,
D. Minnesota,
Fifth Division.

March 29, 1971.

Robert G. Renner, U. S. Atty., by Neal J. Shapiro, Asst. U. S. Atty., for plaintiff.

Saltzman & Goldin, by Alan Saltzman, Hollywood, Cal., for defendant.

NEVILLE, District Judge.

The above case came to trial on a criminal indictment charging a violation of the Selective Service Act in that the defendant failed and refused to report for and submit to induction into the

Armed Forces of the United States. The defendant was indicted on September 23, 1970 on the basis of an induction order issued September 3, 1969 requiring that the defendant report for induction on September 18, 1969. He attacks the induction order on the ground that prior to its issuance he was never informed by his local board of his I-A classification and therefore had no opportunity to exercise his right to a personal appearance before the Board and thereafter, if not successful, to appeal. A chronology of the relevant facts demonstrates that defendant registered with his local board No. 105 St. Louis County at Duluth, Minnesota on July 19, 1967.

By October, 1967 he had changed his address to Sunland, California. In due course he was ordered to report for a physical examination. This he ultimately did in California pursuant to a request for transfer on form 230 submitted by him, and was found satisfactory. Thereafter he registered as a student at the Los Angeles Valley College, Van Nuys, California and accordingly received a II-S deferment expiring in October, 1969. His current information questionnaire submitted January 20, 1968 designated his current mailing address as 8807 Yates Street, Sunland, California. Under date of June 13, 1969, however, he wrote his local Board as follows:

*# 21-105-49-182*

*June 13, 1969*

*Gentlemen:*

*II-S*

*Note temporary change of address*

*3729 Verdugo Rd.*
*L.A. Calif.*

*MAIL (P.O. Box 6363 — Glendale, Ca)*

*James A. Levin*

[A4020]

It will be noted that though the defendant gave his temporary address as 3729 Verdugo Road, Los Angeles, California, he did in capital letters, indicate "MAIL," Post Office Box 6363 at Glendale, California. Three days later and on June 16th, there was subscribed on the outside of defendant's selective service file under the column entitled "Change of addresses" the address of 3729 Verdugo Road, Los Angeles, California. No notation was made on the file cover at

that time of the post office box at Glendale. June 23, 1969, there was mailed to James Allan Levin the notice of his classification as I-A and an advice of his right to a personal appearance and to an appeal. The file copy of this notice indicates no address showing where it was mailed, though most other documents in the file do bear a typed address. The controversy arises in that defendant claims he never received this notice. He states that the temporary address he gave of Verdugo Road was a motel where he stayed for a very brief time, possibly three weeks, and that he was employed at Glendale, California at the address of the post office box where he indicated "Mail." He testified that no mail was ever received there and that if any ever came to the motel, he never received it. The clerk of the draft board was called to the witness stand by the government. She appeared to be a very conscientious and sincere person, but ultimately she was unable when cross-examined to advise with certainty as to which address she had used in mailing the June 23 classification notice. She did state it is the usual practice of her office where there is an out-of-state registrant to go through the file to obtain the last address rather than to rely on the cover sheet. On the other hand, she did state that the very purpose of having the address on the cover sheet is for a quick reference to the last mailing address of the registrant. In any event, her testimony is equivocal, and quite understandably, she has now no distinct personal recollection as to what address was put on the June 23 envelope. Since the document itself names the defendant but specifies no address, there is no indication from this as to where it may have been sent. Approximately a month later and under date of July 22, 1969, the notation on the outside of defendant's file was changed to show his address in care of R. M. Cook and Associates, P. O. Box 6323, Glendale, California. There is no question but that on September 3, 1969, defendant's order to report for induction was mailed to this address and was received by defendant. Accompanying the order was a current information questionnaire on which someone from the local board had typed in red ink the following:

"___I will report to a board in California and request a transfer for induction.

___I will report in Duluth on 9/18/69."

Defendant was expected to check one or the other and he put a check mark on the line preceding the former, namely that he would report to a board in California. The wording of this is such that one not familiar with selective service procedure might assume that the wording "I will report to a board in California and *request a transfer for induction*" was the equivalent thereby of requesting a transfer and a belief that the registrant would await word from his draft board as to where to report. This may well be a strained construction, particularly in view of the fact that for his earlier physical examination, defendant did file and submit form 230 requesting a transfer and therefore could be presumed to know that merely checking the language did not automatically accomplish a transfer nor permit him merely to await further word from his board.

■■ Ultimately, defendant, deliberately not having reported for induction either at Duluth or at any transfer board in California, was declared delinquent and was subsequently indicted. The court is aware that in this criminal case the burden is on the government and it must prove its case beyond a reasonable doubt before the court can find defendant guilty. It is quite clear as a matter of law under numerous decisions that if some procedural step along the line was improper, such for instance, as improper notification or failure to notify, such absence or error will amount to a denial of due process and accordingly will vitiate and void later orders. United States v. Rundle, 413 F.2d 329 (8 Cir. 1969) and cases therein cited. Thus, if such occurred here, the subsequent induction order must be cancelled and an

indictment will not lie. This state of the record puts in issue defendant's credibility. The court frankly was not impressed with the defendant. The file indicates that many of the documents he was obligated to submit to the board were late, and the current information questionnaires including the last one were not filled out as they should have been. The court has no doubt but what the defendant is exercising every effort he can to avoid being inducted. At the trial, however, he was asked to produce and did produce his latest draft card and he removed a card he was carrying from his wallet which showed him to be classified as II–S until October, 1969. His changed classification was in fact some four months prior to October, 1969 and it is reasonable to believe, though of course not conclusively, that had the defendant received his I-A classification card which was enclosed with the June 23 notice he would have been carrying that rather than the II-S card that was introduced in evidence. The question further arises as to whether the court can indulge in a presumption that something that was mailed was received. To indulge this presumption requires the court to find (1) that a communication was properly addressed, (2) with return address and that there was in fact no return thereof to the sender, (3) that it was duly posted, and (4) that postage was prepaid, this latter not required of course with government mail. Since there is no positive proof of #1, it would seem that the presumption of receipt must fail. Further, when a presumption is rebutted by affirmative evidence of non-receipt, i. e. defendant's testimony, the presumption disappears. A presumption operates only when there is no direct evidence and so is inoperative in this case and is not something on which the court can rely. There is no question but what the draft board had it carefully read the defendant's letter quoted above in this opinion would have known the distinction between the two addresses as it later did by noting such on the selective service file cover some month or more later.

Being required to pass only on the evidence adduced at the hearing and without the aid of a presumption the court has at least a reasonable doubt as to whether defendant ever received the notice of June 23 enclosing his I-A classification card and advising him of his rights to a personal appearance and to appeal. The court is not governed by the mere fair preponderance rule and must act accordingly.

The government claims that the court cannot consider evidence adduced at the hearing *dehors* the defendant's selective service file and that the only question is whether there is a "basis in fact" in the file for the board's judgment in determining a classification and denying a deferment. Such is not the law in a criminal case where the question is whether a registrant was accorded due process and the local board has met procedural requirements. 50 U.S.C. App. Sec. 460(b) (3) limiting judicial review excepts from its operation criminal cases, reads as follows:

"No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, *except as a defense to a criminal prosecution instituted under section 12 of this title [section 462 of this Appendix]*, after the registrant has responded either affirmatively or negatively to an order to report for induction. * *. * "

This view of the case renders unnecessary consideration of defendant's contention buttressed by a 174 page brief that the Selective Service law is unconstitutional. This court has however previously ruled on this contention adversely to this view. United States v. Crocker, 294 F. Supp. 776 (D.Minn.1969), aff'd., 420 F. 2d 307 (8 Cir. 1970), cert. den. 397 U.S. 1011, 90 S.Ct. 1240, 25 L.Ed.2d 424 (1970). Nor does the court need to rule on whether the principle of United States v. Wallen, 315 F.Supp. 459 (D.Minn.

1970) is applicable to this case. The court believes that defendant intentionally and deliberately refused to report for induction, but feels compelled somewhat reluctantly to hold that because there is a reasonable doubt as to whether defendant was accorded due process as his case progressed through the various steps in his local board, he must be acquitted.