Harold S. TURLEY, by his Next Friend, June M. Turley, Plaintiff,

v.

SELECTIVE SERVICE SYSTEM ORANGE COUNTY, CALIFORNIA, LOCAL BOARD NO. 134, Glen A. Harris, Arthur Dickenson, William S. Garman, Minoru Inadomi, John Weidnecht and Dr. O. Wheeler, Members of said Local Board, Defendants.

Civ. No. 68–290–F.

United States District Court
C. D. California.

May 27, 1969.

846

A. L. Wirin, Fred Okrand, Laurence R. Sperber, Los Angeles, Cal., for plaintiff.

Wm. Matthew Byrne, Jr., U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief, Civil Division, James D. Murray, Asst. U. S. Atty., Los Angeles, Cal., for defendants.

## MEMORANDUM OPINION

FERGUSON, District Judge.

Plaintiff in this action challenges his local draft Board's action in declaring him a delinquent pursuant to certain Selective Service Law Regulations. During the pendency of this action, said Board ordered that plaintiff report for induction into the armed services. That order was preliminarily enjoined by this court. An appeal taken from that injunction by the government is presently pending. The matter was submitted to the court upon stipulated facts.

This court finds, for the reasons set forth below, that the plaintiff was erroneously retained in a I–A classification, and that the Board's order to report for induction is therefore unenforceable and void. Said Board is therefore ordered to cancel its order requiring plaintiff to report for induction.

### I

This court has jurisdiction over the subject matter herein pursuant to 28 U.S.C. § 1361.

### II

Pursuant to regulations promulgated by the President of the United States and under the Universal Military Training and Service Act, defendants, on or about September 8, 1966, properly placed plaintiff in the classification I–SH, he being a student at high school. Subsequent to plaintiff's graduation from high school, defendants, at the request of plaintiff, were notified, on or about June 19, 1967, by the Registrar of Dartmouth College, Hanover, New Hampshire, that plaintiff had been accepted as a full-time student at said college and that an additional notification would be furnished the Board when plaintiff was formally registered. Plaintiff entered said Dartmouth College as a full-time student on or about September 21, 1967, and on or about October 12, 1967, defendants received from the Registrar of said college, on Selective Service Form 109, notification that plaintiff had so entered a full-time course of study at that institution.

On or about October 18, 1967, defendants received from plaintiff a letter dated October 16, 1967, which reads as follows:

"Mon. Oct. 16, 1967

"To Whom It May Concern:

"Today I have placed my selective service card in the hands of the leaders of the Boston Anti-War Movement. They will deposit my card, along with hundreds of others, with the Attorney General of the United States. Today I have decided no longer to co-operate with the present government in relation to its policies in the draft and the situation in Vietnam.

"As of now, you, the selective service, no longer will wield any control whatsoever upon me.

"It is with no regret that

I remain,

/s/ Harold S. Turley"

Following receipt of said letter, the Board, on or about November 6, 1967, without notification to plaintiff that it was considering doing so, declared plaintiff to be a delinquent "Per L.B. #85", issued to him a Delinquency Notice (SSS Form 304) and mailed the Notice to plaintiff on or about November 7, 1967.

The "L.B. #85" referred to in the Notice is Local Board Memorandum No. 85 of the Selective Service System, dated October 24, 1967, the body of which reads as follows:

"SUBJECT: DISPOSITION OF ABANDONED OR MUTILATED REGISTRATION CERTIFICATE AND NOTICES OF CLASSIFICATION

"1. Whenever an abandoned or mutilated Registration Certificate or

current Notice of Classification reaches a local board, and the card was originally issued to a registrant by some other board, it should be forwarded to the State Director of Selective Service, who will forward it to the appropriate local board if within the State, or the appropriate State Director if the board of origin is outside the State.

"2. Whenever a local board receives an abandoned or mutilated Registration Certificate or current Notice of Classification which had been issued to one of its own registrants, the following action is recommended:

"(a) Declare the registrant to be delinquent for failure to have the card in his possession.

"(b) Reclassify the registrant into a class available for service as a delinquent.

"(c) At the expiration of the time for taking an appeal, if no appeal has been taken, and the delinquency has not been removed, order the registrant to report for induction or for civilian work in lieu of induction if in Class I–O, as a delinquent, or in the board's discretion in a flagrant case, report him to the United States Attorney for prosecution.

"(d) If appeal is taken and the registrant is retained in a class available for service by the appeal board, and the delinquency has not been removed, order the registrant to report for induction or for civilian work in lieu of induction if in Class I–O, as a delinquent, or in the board's discretion in a flagrant case, report him to the United States Attorney for prosecution."

On October 26, 1967, the Director of the Selective Service System made public, and sent a copy to all the local boards of the Selective Service System, including defendants herein, a letter which reads as follows:

"The basic purpose and the objective of the Selective Service system is the survival of the United States. The principal means used to that end is the military obligation placed by law upon all males of specified age groups. The complexities of the means of assuring survival are recognized by the broad authority for deferment from military service in the national health, safety, or interest.

"Important facts, too often forgotten or ignored are that the military obligation for liable age groups is universal and that deferments are given only when they serve the national interest. It is obvious that any action that violates the military selective service act or the regulations, or the related processes cannot be in the national interest.

"It follows that those who violate them should be denied deferment in the national interest. It also follows that illegal activity which interferes with recruiting or causes refusal of duty in the military or naval forces could not by any stretch of the imagination be construed as being in support of the national interest.

"The Selective Service system has always recognized that it was created to provide registrants for the armed forces, rather than to secure their punishment for disobedience of the act and regulations. There occasionally will be registrants, however, who will refuse to comply with their legal responsibilities, or who will fail to report as ordered, or refuse to be inducted. For these registrants, prosecution in the courts of the United States must follow with promptness and effectiveness. All members of the Selective Service system must give every possible assistance to every law enforcement agency and especially to United States attorneys.

"It is to be hoped that misguided registrants will recognize the long-range significance of accepting their obligations now, rather than hereafter regretting their actions performed under unfortunate influences of misdirected emotions, or possible honest but wholly illegal advice, or even completely vicious efforts to cripple, if not destroy, the unity

vital to the existence of a nation and the preservation of the liberties of each of our citizens.

"Demonstrations, when they become illegal, have produced and will continue to produce much evidence that relates to the basis for classification and, in some instances, even to violation of the act and regulations. Any material of this nature received in national headquarters or any other segment of the system should be sent to state directors for forwarding to appropriate local boards for their consideration.

"A local board, upon receipt of this information, may reopen the classification of the registrant, classify him anew, and if evidence of violation of the act and regulations is established, also to declare the registrant to be a delinquent and to process him accordingly. This should include all registrants with remaining liability up to 35 years of age.

"If the United States Attorney should desire to prosecute before the local board has ordered the registrant for induction, full cooperation will be given him and developments in the case should be reported to the state director and by him to national headquarters.

"Evidence from any source indicating efforts by nonregistrants to prevent induction or in any way interfere illegally with the operation of the Military Selective Service Act or with recruiting or its related processes, will be reported in as great detail as facts are available to state headquarters and national headquarters so that they may be made available to United States attorneys.

"Registrants presently in classes IV F or 1 Y who have already been reported for delinquency, if they are found still to be delinquent, should again be ordered to report for physical examination to ascertain whether they may be acceptable in the light of current circumstances.

"All elements of the Selective Service system are urged to expedite responsive classification and the processing of delinquents to the greatest possible extent consistent with sound procedure."

On the same day that the Board declared plaintiff a delinquent, it changed his classification to I–A (available for military service). Plaintiff lost his appeal from the classification.

On April 18, 1968, defendants mailed plaintiff an Order to Report for Induction into the Armed Forces on April 29, 1968.

On April 23, 1968, this court issued a preliminary injunction enjoining said induction until further order of this or a higher court.

Appeal from this court's order granting the said preliminary injunction is pending before the Court of Appeals for the Ninth Circuit.

On May 19, 1969, plaintiff's motion to add the individual members of this local Board as parties defendant was granted, and the parties stipulated that the answer of the local Board be deemed the answers of the additional defendants.

### III

Before reaching the jurisdictional question raised by section 10(b) (3) of the Military Selective Service Act of 1967 [50 U.S.C.App. § 460(b) (3)], purporting to preclude preinduction judicial review of draft board classifications, the court must first determine whether or not plaintiff was entitled to such statutory exemption or deferment as would cause said section to be inapplicable under the rule of Oestereich v. Selective Service Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968).

### IV

Plaintiff contends he was entitled to a student deferment (classification II–S) under 32 C.F.R. § 1622.25. While he concedes that such a deferment need be granted only upon a request therefor, plaintiff argues that in fact such a request was made. The court does not agree.

Plaintiff does not dispute that both the Selective Service Act and the Selective Service Regulations require that a registrant request a student deferment (II–S) in order to be entitled to one. Plaintiff argues that such a request was made in that, at his request, his college submitted to defendants (1) upon plaintiff's acceptance at the college, notification of such acceptance, and (2) notification, at the appropriate time, that plaintiff had entered upon a full-time course of study. The notification that plaintiff had begun his study was submitted on defendants' SSS Form 109. The form contains the statement, "Submission of this form does not constitute a request for deferment." No actual request, upon defendants' special form or otherwise, was ever made.

Plaintiff urges the court to be lenient in its construction of what constitutes a request. However, the requirement of an actual request works to the registrant's benefit rather than to his detriment. Serious consequences attach to the granting of a student deferment; the deferment should therefore not be granted unless the Board is certain that the registrant is in fact seeking such status. For example, a registrant who has received a II–S deferment is treated as falling within any designated age group which the Secretary of Defense may call to duty regardless of his actual age. 32 C.F.R. § 1631.7(b) (3). Also, such a registrant may become ineligible for a III–A classification (deferment for registrant with child). 32 C.F.R. § 1622.30(a). If he pursues graduate study and is ordered to report for induction during the academic year, he would be unable to obtain a I–S deferment to the end of such year. 32 C.F.R. § 1622.-15(b). Moreover, registrants who receive such a deferment become subject to extended liability to the draft; whereas liability ordinarily terminates at age twenty-six, a deferment raises the age of termination to thirty-five. 32 C.F.R. § 1622.50.

There is an additional reason for not treating the college's submission of SSS Form 109 as a request for a student deferment. For the Board to consider it such would place a burden upon the student who does not seek the deferment, but who feels that he is obliged to officially notify his Board of his current academic status. 32 C.F.R. § 1641.7 requires a registrant to keep his local Board informed of his "occupational, marital, family, dependency, and military status", and a registrant may regard that duty as encompassing his student status. A good faith attempt to merely keep his Board informed of his current activities should not require a registrant to be burdened with the consequences of a deferment for which he has made no actual request.

Finally, requiring an actual request does not prejudice a registrant. The statute clearly entitles him to the deferment upon presenting the facts to his Board. Even if he mistakenly thinks he had requested a deferment by having his school submit SSS Form 109, he may, upon discovering that he did not, submit an actual request.

The court therefore finds that plaintiff was not entitled to a II–S deferment at the time he was declared a delinquent by defendants.

V

The court does find, however, that plaintiff was entitled to a I–S deferment under 32 C.F.R. § 1622.15(b), which provides as follows:

"In Class I–S shall be placed any registrant who while satisfactorily pursuing a full-time course of instruction at a college, university or similar institution of learning and during his academic year at such institution is ordered to report for induction, except that no registrant shall be placed in Class I–S under the provisions of this paragraph

"(1) who has previously been placed in Class I–S thereunder or

"(2) who has been deferred as a student in Class II–S and has received his baccalaureate degree. A registrant who is placed in Class I–S under

the provision of this paragraph shall be retained in Class I–S

"(1) until the end of his academic year or

"(2) until he ceases satisfactorily to pursue such course of instruction, whichever is the earlier. \* \* \*"

It is stipulated by the parties that at the time plaintiff received his order to report for induction, his local Board had notice that he was pursuing a full-time course of college instruction. Plaintiff does not fall within either of the two exceptions provided in the regulations. The I–S deferment is based directly upon a statutory provision which provides that such deferment, "shall, upon the facts being presented to the local board", be granted. Military Selective Service Act of 1967, § 6(i) (2) [50 U.S. C.App. § 456(i) (2)].

Since plaintiff clearly is within the scope of the I–S deferment, a conflict is presented between his statutory right to such deferment and the defendants' application of the delinquency regulations under which he was ordered to report for induction. Having found such a conflict, the court must now determine whether or not it has jurisdiction to resolve it.

## VI

In Oestereich v. Selective Service Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), petitioner was a divinity student who had obtained an exemption on that basis by his local Board as required by section 6(g) of the Selective Service Act. He returned his registration certificate to the government for the purpose of expressing his dissent from United States participation in the war in Vietnam. He was thereafter declared delinquent, pursuant to Selective Service Regulations, for (1) failure to have the certificate in his possession, and (2) failure to keep his Board advised of his local status.

The Court noted that Congress referred to delinquents in its specification of the order in which registrants were to be called. The term does not appear elsewhere in the statute. The Selective Service System Regulations define a delinquent as one required to be registered under the selective service law who "fails or neglects to perform any duty required of him under the provisions of the selective service law". 32 C.F.R. § 1602.4. Said law requires a registrant to have his registration certificate in his possession at all times.

Nevertheless, the Court, in *Oestereich*, 393 U.S. at 236–237, 89 S.Ct. at 416, stated:

"Congress did not define delinquency; nor did it provide any standards for its definition by the Selective Service System. Yet Selective Service, as we have noted, has promulgated regulations governing delinquency and uses them to deprive registrants of their statutory exemption, because of various activities and conduct and without any regard to the exemptions provided by law.

"We can find no authorization for that use of delinquency. Even if Congress had authorized the Boards to revoke statutory exemptions by means of delinquency classifications, serious questions would arise if Congress were silent and did not prescribe standards to govern the Boards' actions. There is no suggestion in the legislative history that, when Congress has granted an exemption and a registrant meets its terms and conditions, a Board can nonetheless withhold it from him for activities or conduct not material to the grant or withdrawal of the exemption. So to hold would make the Boards freewheeling agencies meting out their brand of justice in a vindictive manner.

\* \* \* \* \* \*

"We deal with conduct of a local Board that is basically lawless."

The Court then turned its attention to section 10(b) (3) of the Act, purporting to preclude pre-induction judicial review. The statute provides as follows [50 U.S. C.App. § 460(b) (3)]:

"No judicial review shall be made of the classification or processing of any

registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title [section 462 of this Appendix], after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form: *Provided,* That such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant. * * *"

In holding that the statute did not prevent review of the Board's action in that case, the Court stated:

"To hold that a person deprived of his statutory exemption in such a blatantly lawless manner must either be inducted and raise his protest through habeas corpus or defy induction and defend his refusal in a criminal prosecution is to construe the Act with unnecessary harshness. As the Solicitor General suggests, such literalness does violence to the clear mandate of § 6(g) governing the exemption. Our construction leaves § 10(b) (3) unimpaired in the normal operations of the Act.

"No one, we believe, suggests that § 10(b) (3) can sustain a literal reading. For while it purports on its face to suspend the writ of habeas corpus as a vehicle for reviewing a criminal conviction under the Act, everyone agrees that such was not its intent. Examples are legion where literalness in statutory language is out of harmony either with constitutional requirements * * * or with an Act taken as an organic whole. * * * We think § 10(b) (3) and § 6(g) are another illustration; and the Solicitor General agrees. Since the exemption granted divinity students is plain and unequivocal and in no way contested here, and since the scope of the statutory delinquency concept is not broad enough to sustain a revocation of what Congress has granted as a statutory right, or sufficiently buttressed by legislative standards, we conclude that pre-induction judicial review is not precluded in cases of this type." 393 U.S. at 238, 89 S.Ct. at 416–417.

Defendants argue, however, that this case is not similar to *Oestereich.* Defendants' arguments were primarily directed toward plaintiff's claim that he was entitled to a II–S student deferment. The court has already found that he was not so entitled. The arguments are therefore considered in light of the I–S deferment to which this court has found plaintiff was entitled.

■ Defendants assert that *Oestereich* is distinguishable in two ways. First, unlike the divinity student deferment, the II–S deferment is required to be granted by the President (through the Selective Service System) "under such rules and regulations as he may prescribe". Military Selective Service Act of 1967, § 6(h) (1) [50 U.S.C.App. § 456(h) (1)]. It is doubtful whether such language may be construed so as to in effect negate the deferment by application of the delinquency regulations. *Contra,* Breen v. Selective Service Local Board No. 16, 406 F.2d 636 (2d Cir. 1969), cert. granted, 394 U.S. 997, 89 S. Ct. 1592, 22 L.Ed.2d 774 (U.S. April 28, 1969). Nevertheless, that issue is no longer relevant since the statute providing for the I–S deferment to which plaintiff is entitled does not contain such language.

■ The remaining point raised by defendants is that, somehow, a "deferment" is of a different nature from an "exemption". It is true that a deferment only postpones induction for a limited time. But the same is true of the divinity student "exemption". Upon completion of his course of instruction, the divinity student is, of course, no longer a student, and therefore no longer entitled to the "exemption". Should

he for some reason fail to enter the ministry, or otherwise fail to qualify for the ministerial exemption, he is again liable for induction. The statute expressly provides that the ministry student is not exempt from registration. Thus, in the ordinary situation, during the time in which they qualify by statute for such status, neither the "exempt" divinity student nor the "deferred" college student may be called for induction. When the basis for either status ends, the registrants are equally liable for induction unless they have some basis for a further deferment or exemption. The statement, therefore, that an exempt person is "outside the system", and a deferred person is "within" it, Anderson v. Hershey, 410 F.2d 492 (6th Cir. April 11, 1969), is a meaningless play on words. While both registrants are entitled to their preferred status, they are "outside the pool of manpower"; when they are no longer entitled to such status, they are within it. They are at all times a part of the Selective Service System, and must be registered therein. The distinction between exemption and deferment is without legal significance. E.g., Bowen v. Hershey, 410 F.2d 962 (1st Cir. Mar. 26, 1969).

■■ The key to the application of Oestereich is not whether a classification happens to be called an "exemption" or a "deferment". It is rather whether there is a clear statutory mandate precluding any exercise of discretion by the Board. As the Court stated in Oestereich:

"In such instances, as in the present one, there is no exercise of discretion by a Board in evaluating evidence and in determining whether a claimed exemption is deserved. The case we decide today involves a clear departure by the Board from its statutory mandate."

Thus, where the statutory status desired requires the Board to exercise its discretion (e.g., evaluating evidence, making determinations of fact, or exercising judgment), as in the case of conscientious objector classifications, section 10(b) (3) operates to preclude preinduction judicial review. This is the holding of Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968). That case, therefore, has no application to the one at bar since the I–S classification permits no such exercise of discretion by the Board. The Clark case further negates defendants' argument that whether a classification is called an exemption or a deferment is conclusive as to the operation of section 10(b) (3). Clark, involving a conscientious objector, and Oestereich both involved exemptions; yet, only in Oestereich was the statute held to be inapplicable. Clearly, the sole distinction was the existence of discretion by the Board in passing upon the claimed status, and not the characterization of the status.

The court therefore finds that the Board in this case clearly departed from the statutory mandate in failing to grant a I–S deferment to plaintiff, while having knowledge of his academic status, and that section 10(b) (3) is not a bar to jurisdiction.

The court is aware that there are conflicting decisions from various courts in this area, but as yet the law in this circuit has not been settled. Compare Foley v. Hershey, 409 F.2d 827 (7th Cir. April 8, 1969); Bowen v. Hershey, 410 F.2d 962 (1st Cir. Mar. 26, 1969); Carey v. Selective Service Local Board No. 2, 1 Sel.Serv.L.Rep. 3326 (D.Conn. Mar. 13, 1969); Armendariz v. Hershey, 295 F. Supp. 1351 (W.D.Tex.1969); with Rich v. Hershey, 408 F.2d 944 (10th Cir. Mar. 27, 1969); Green v. Hershey, 298 F.Supp. 201 (E.D.Va. Mar. 12, 1969).

## VII

■ The government suggests that even if plaintiff were entitled to a I–S deferment at the time his order of induction was issued, the case is now moot since that academic year has since ended.

Since plaintiff should have been classified I–S upon the issuance of the order to report for induction, it follows that upon expiration of such I–S classification the defendants would have been required to reclassify him, according him all the rights incident to classification (such as the right to appeal). Defendants cannot now evade that consequence by attempting to rely upon the original order. The case is therefore not moot.

## VIII

Pursuant to the provisions of Rule 52 of the Federal Rules of Civil Procedure, this opinion shall constitute the findings of fact and conclusions of law of the court.

## IX

### ORDER

It is the judgment of this court and the same is directed to be prepared separately and entered under Rule 58 of the Federal Rules of Civil Procedure as follows:

It is ordered, adjudged and decreed—

1. That plaintiff is entitled to judgment as against defendants.

2. That defendants shall cancel the Order to Report for Induction issued to plaintiff on April 18, 1968.

3. That defendants shall reclassify plaintiff anew before issuing any new order for him to report for induction.

### STIPULATION FOR DISMISSAL OF NOTICE OF APPEAL, AND ORDER THEREON

IT IS HEREBY STIPULATED by and between the parties through their respective counsel of record, pursuant to Rule 42 of the Federal Rules of Appellate Procedure that the Notice of Appeal filed herein by defendants on July 24, 1969 may be dismissed.

The reason for the foregoing stipulation is that it has been decided by the Solicitor General of the United States that no appeal will be prosecuted in this case.