Gerald Robert **SHERIDAN**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 72–1725.

United States Court of Appeals,
Eighth Circuit.

Submitted April 26, 1973.

Decided Aug. 10, 1973.

Certiorari Denied Dec. 3, 1973.
See 94 S.Ct. 594.

John S. Connolly, St. Paul, Minn., for appellant.

John F. Lee, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before GIBSON, LAY and STE-PHENSON, Circuit Judges.

GIBSON, Circuit Judge.

In a trial to the court [1] without a jury Gerald Robert Sheridan was convicted of failure to report for and submit to induction into the Armed Forces of the United States in violation of Title 50 U. S.C. App. § 462. He received a two-year sentence, with 18 months thereof suspended. A timely appeal followed.

Sheridan registered with Local Board No. 105 in Duluth, Minnesota, on March 28, 1969, and received a I–S–H classification at that time as he was still in high school. On June 21, 1969, he was classified I–A and was sent the usual notice of classification and notice of his right to a personal appearance and appeal. He took no appeal at that time. On June 30, 1969, he submitted a current information questionnaire in which he indicated that he would be at Creighton University, Omaha, Nebraska for the fall 1969 school year. On July 23, 1969, he wrote to the board and indicated that he did not believe that his I–A classification was correct, that he was entitled to a student deferment. He requested a personal appearance, "unless this can be cleared up through the mail." The local board sent him SS Form 104, which is used to request a student deferment, requested him to submit it to the board "when [he became] a full-time student," and told him that the college should forward SS Form 109. Neither of these forms was returned to the board.

However, on October 13, 1969, the board received a card from Creighton University, signed by Sheridan, advising the board that Sheridan was enrolled as a full-time student and that he might expect to graduate in June 1973. His file remained dormant for one year. In October 1970, he was ordered to and did report for a physical examination. He was found medically acceptable for induction. On November 30, 1970, the board received a student certificate from the college of St. Scholastica, Duluth, Minnesota. Sheridan also filed at that time the SS Form 104 seeking a student deferment. In the form he indicated that he was asked not to return to Creighton because of his poor scholastic performance and that he had earned only nine credits toward his ultimate graduation during the preceding year; 180 credits were required for graduation in the program he was taking.

On December 21, 1970, the board advised Sheridan that it had reviewed his file and determined that there was no justification for changing his classification from I–A. On January 28, 1971, he was ordered for induction.[2] This induction date was postponed until March 30, 1971, at which time he refused induction.

Sheridan contends that he was denied due process in the board's refusal to grant him a student deferment in December 1970.

The statutory authority for the granting of student deferments during the period at issue is set forth in Title 50 U. S.C. App. § 456(h)(1).[3] Pursuant to

---

1. The Honorable Philip Neville, United States District Judge for the District of Minnesota.

2. Although he thereafter requested and returned an SS Form 150 applying for conscientious objector status there was no contention made at trial that he was entitled to have the claim considered. Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971).

3. The statute read in pertinent part:
 "(h)(1) Except as otherwise provided in this paragraph, the President shall, under such rules and regulations as he may prescribe, provide for the deferment from training and service in the Armed Forces of persons satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution of learning and who request such deferment. A deferment granted to any person under authority of the preceding sentence shall continue until such person completes the requirements for his baccalaureate degree, fails to pursue satisfactorily a full-time course of instruction, or attains the twenty-

the authority and mandate of this section the Selective Service adopted, and had in effect during the period of time when Sheridan's request for deferment was considered, a regulation pertaining to student deferments. 32 C.F.R. § 1622.25.[4]

It is the responsibility of the registrant to request a student deferment, 32 C.F.R. § 1622.25(a), and to submit evidence that he is entitled to such a deferment. 32 C.F.R. § 1622.-25(d); United States v. Wilbur, 427 F. 2d 947, 949 (9th Cir.), cert. denied, 400 U.S. 945, 91 S.Ct. 250, 27 L.Ed.2d 250 (1970). We need not decide, however, whether the unofficial notification by the college, even though signed by Sheridan, was sufficient to request the student deferment as the District Court held that, even if the reclassification were required at the time the local board received the card in 1969, the board's failure to reclassify in 1969 furnished no defense to the offense charged.[5]

The District Court thus, in effect, treated Sheridan as having a de facto II–S classification for the 1969 school year, which classification was subsequently lost by his poor scholastic performance. The question we here consider is whether or not the board's failure to classify Sheridan II–S in 1969 could furnish him a defense to the 1971 induction order and subsequent prosecution.

fourth anniversary of the date of his birth, whichever first occurs."
In 1971 the statute was amended to delete this provision for a four-year deferment thus allowing a deferment only until the end of the term during which a student is ordered for induction, or if in his last year, until the end of the academic year.

4. That regulation read:
"1622.25 Class II-S Registrant deferred because of activity in study.
"(a) In Class II-S shall be placed any registrant who has requested such deferment and who is satisfactorily pursuing a full-time course of instruction at a college . . . such deferment to continue until such registrant completes the requirement for his baccalaureate degree, fails to pursue satisfactorily a full-time course of instruction, or attains the twenty-fourth anniversary of the date of his birth, whichever occurs first.

\* \* \* \* \*

"(c) A student shall be deemed to be 'satisfactorily pursuing a full-time course of instruction' when, during his academic year, he has earned, as a minimum, credits toward his degree, which, when added to any credits earned during prior academic years, represent a proportion of the total number required to earn his degree at least equal to the proportion which the number of academic years completed bears to the normal number of years established by the school to obtain such degree. For example, a student pursuing a four-year course should have earned 25% of the credits required for his baccalaureate degree at the end of his first academic

year, 50% at the end of his second academic year, and 75% at the end of his third academic year.
"(d) It shall be the registrant's duty, to provide the local board each year with evidence that he is satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution of learning."

5. The District Court held:
"It is long established that procedural irregularities, if any, in local board treatment of cases must result in some prejudice to a registrant. United States v. Spiro, 384 F.2d 159 (3rd Cir. 1967), cert. denied, 390 U.S. 956 [88 S.Ct. 1028, 19 L.Ed.2d 1151] (1968); United States v. Jones, 384 F.2d 781 (7th Cir. 1967); Bradshaw v. United States, 242 F.2d 180 (10th Cir. 1957); Rowton v. United States, 229 F.2d 421 (6th Cir. 1956), cert. denied, 351 U.S. 930 [76 S.Ct. 788, 100 L.Ed. 1460] (1956).
"The court cannot conceive any possible prejudice here for had the registrant received his II-S deferment in the fall of 1969 by complying with the request to submit forms it is patent that he would not have had it renewed in November or December of 1970 a year or more later even though he changed colleges. He is relying on a mere formal technicality in the board proceedings to attempt to extricate himself from the charge leveled in the indictment. The court can see no denial of due process here and certainly there was a basis in fact for the board's I-A classification and a denial of the II-S request."

The actual effect of the board's failure to properly classify Sheridan in 1969 was that the board did not have to reclassify him I–A in 1970 when he was no longer eligible for the student deferment. This had the effect of denying Sheridan a personal appearance and an appeal from the reclassification.

It is clear that Sheridan was not entitled to a student deferment at the time he applied for it in December 1970. The statute provided for a deferment only for those students who were then *"satisfactorily pursuing* a full-time course of instruction." 50 U.S.C. App. § 546(h)(1). The regulation previously quoted provides that in order to be satisfactorily pursuing a course of study the student must have completed a proportional number of credits during the prior 12-month period (academic year) to complete his degree within the normal period of time. Normally, for a four-year program, a registrant would be expected to earn 25 per cent of his credits during the first year; Sheridan had earned only 5 per cent.

■ Even though we assume that the board improperly failed to grant Sheridan a deferment during his first year of college (as was argued at the trial) based only on the card which Creighton University sent to the board, he was not entitled to have the deferment continued during his second year as his "pursuit" was no longer satisfactory. This Court has previously determined that procedural errors which do not result in "substantial prejudice" are no defense to an otherwise lawful induction order. United States v. Chaudron, 425 F.2d 605, 608 (8th Cir.), cert. denied, 400 U.S. 852, 91

S.Ct. 93, 27 L.Ed.2d 89 (1970). Like the trial court, we cannot see how the board's failure to classify Sheridan II–S for the 1969–70 school year could have resulted in prejudice. He was not ordered for induction during the academic year for which such a deferment would have been effective. During the year of his induction he applied for the deferment and his application was considered by the board. Had he possessed, during the prior school year, a student deferment, he would have lost it for failure to satisfactorily pursue his course of instruction. United States v. Rundle, 413 F.2d 329 (8th Cir. 1969),[6] the only authority cited by Sheridan, is distinguishable from the instant case. That opinion shows that Rundle's selective service file reflected a series of changes in classification from I–A to II–S and back throughout Rundle's academic career, apparently due to Rundle's failure to pay his college fees when due. At the time the induction notice was sent, May 5, 1967, Rundle was classified I–A. Immediately thereafter the board received a notice from the college that he was a full-time student. Rundle refused induction and was prosecuted and convicted of the draft offense, based on the May 5, 1967 order for induction.

■ A majority in *Rundle* viewed its facts as presenting a mandatory reopening situation and, since a reopening would have automatically required the cancellation of the induction order upon which the prosecution was based, 32 C. F.R. § 1625.14, found prejudice. In the instant case no mandatory reopening situation existed that would have required the cancellation of any outstanding or-

---

6. *Rundle*, involving a mandatory reopening situation, is not applicable to this case, since Sheridan did not present a prima facie case on November 30, 1970, showing a satisfactory pursuit of his instruction. The defendant in *Rundle* did present a prima facie case, as the Court held, when the "University notified the board by Form 109 that Rundle was a 'full-time' student." United States v. Rundle, *supra* at 331.

The applicability of *Rundle* to other factual situations is questionable. Each judge wrote a separate opinion. Judge Blackmun (now, Mr. Justice Blackmun) concurred with the majority opinion only because "on the *facts* we seem to have a mandatory reopening situation here," which presented a technical defense. United States v. Rundle, *supra* at 335 (emphasis added). Judge Mehaffy dissented.

ders for induction pursuant to the regulations. 32 C.F.R. § 1625.14. Here, the registrant did not present facts concerning his satisfactory pursuit of his course of instruction that would have justified a change in the registrant's classification. 32 C.F.R. § 1625.2. The board, therefore, properly refused to reopen the registrant's classification. 32 C.F.R. § 1625.4.

 The cases discussed by the dissent present factual situations where the registrant presented a prima facie entitlement to the board. We do not view these as analogous to the instant case because of the undisputed evidence in this case that the defendant was no longer entitled to the deferment. In Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970), the leading case where the defendant had made a prima facie showing but was denied a reopening by the board, the Court recognized that the classification need not be reopened if the truth of the new allegations, establishing the prima facie case, was "conclusively refuted by other reliable information in the registrant's file." Mulloy v. United States, *supra* at 416, 90 S.Ct. at 1771. Here no prima facie case was made. No refutation was even required. The registrant's own application on its face shows he did not qualify for a II–S for the 1970 school year. Under these circumstances the registrant would not be entitled to the procedural rights of a personal appearance and an appeal.

Many of the other cases cited in the dissent involved the situation present in United States v. Pickett, 460 F.2d 1255 (8th Cir. 1972). In those cases, all occurring after the Selective Service had ceased to defer graduate students, the registrants had received notices of induction while enrolled in school. The courts held that they were entitled to a I–S deferment until the end of the school year as provided by statute. The boards, however, only postponed their induction until the end of the school year. First, the prima facie showing that they were entitled to a deferment

was sufficient to trigger the requirement that their files be reopened, and thus have all outstanding orders of induction canceled. This in itself would have been sufficient to prevent any prosecution on the void orders. The courts went on to hold that while the registrants were under the induction notices they were prevented from seeking any other form of deferment, such as conscientious objector or occupational deferments, and this sufficed to show prejudice in the procedure followed by the boards. Unlike the registrants in those cases, however, Sheridan was not under induction orders during the period following the board's procedural error, if it can thus be characterized. Sheridan was retained in a I–A classification, but received no notices of induction during his first year of college at Creighton, or until five weeks after the board refused to change his classification on December 21, 1970.

The board's procedure did not prejudice the presentation of his conscientious objector claim. Sheridan could have presented this claim at any time prior to the induction notice. He further had time to present his claim subsequent to the board's action in December and prior to his induction notice of January 28. He did not even request SS Form 150 until after receipt of the induction notice, indicating that his was a late maturing claim which would not have been presented at a hearing in December.

 Sheridan asks this Court to hold that he had established a prima facie case which would warrant the reopening of his classification on the showing that it was still possible for him to graduate by the end of his fourth year without regard to the number of credits which he earned in the first year. To do so would be to disregard the statutory scheme established by Congress which authorized the Executive Branch to determine what would constitute satisfactory pursuit of a course of study. In determining eligibility for a continuing deferment for university or college at-

tendance, a check of the past year's performance of a student at that university is a reasonable guide to determine his progress. When he fails to meet the schedule of credits required by the regulations, his basis for scholastic deferment vanishes.

In conclusion, we think the dissent's reference to the board's action in not classifying Sheridan II–S during the 1969 school year as "callous" merits discussion. Sheridan informed the board during the summer of 1969 that he intended to enroll at Creighton for his collegiate studies. He received from the board its SS Form 104, which he was instructed to complete after enrolling in college, and SS Form 109, which Creighton was required to complete and forward. Sheridan could not be placed in II–S until he actually commenced his course of instruction. Had he then used the proper forms that had been previously sent to him, the board undoubtedly would have placed him in II–S for that school year. He carried the burden of making a proper request and demonstrating to the board his entitlement to the scholastic deferment. United States v. Wilbur, *supra*. This he did not do, but Creighton itself sent a facsimile type form, signed by Sheridan, showing his enrollment. We are not overly concerned on matters of form and would probably hold that Creighton's form was sufficient notification, if properly brought to the attention of the board. Although this form was placed in Sheridan's file, it was not recognized by the board's clerical personnel as the normally-used form to request a II–S deferment. The clerical personnel failed to realize the significance of Creighton's facsimile form. This miscue does not demonstrate a callous disregard of the registrant's rights. The District Court recognized and treated the registrant as having a de facto deferment for the 1969 school year. If his induction order had been issued in that school year, he would have been prejudiced by the failure of the board not to recognize the significance of the Creighton form, and we would hold that any induction order issued during that year was invalid.

However, it was incumbent upon Sheridan, in order to maintain a II–S deferment from year to year, to provide the board with information showing a satisfactory pursuit of a full-time course of instruction during the prior year. This he did not do on the basis of his record at Creighton, and, therefore, he was not entitled to a deferment for the 1970–71 school year. Since clearly under the regulations Sheridan had not satisfactorily pursued a course of instruction during the prior year, the board properly refused his request of November 30, 1970, for a II–S deferment. Under these facts, he was not prejudiced. Even at this stage, Sheridan could have applied for a C–O classification. He, however, waited until after the induction order was issued on January 28, 1971, to apply for a C–O classification.

■ We think his induction order at that time was valid. When he refused to be inducted, another person had to be called in his place. We fail to see how he was ill treated. He alone made his decision not to be inducted and to suffer the consequences. If it be the law that every procedural action or step taken by a board must be perfect in all respects in order to issue a valid order of induction, then any error gives rise to a defense against an induction order. However, not every defect in processing a registrant's file should be a defense to an induction order. A registrant who has received substantially fair consideration of his claim and has been given the opportunity to receive deferments accorded under the law to those in like situations should be amenable to the induction laws. Whether or not he chooses to respond to the obligations of that law is a matter for his own decision.

The judgment is affirmed.

LAY, Circuit Judge (dissenting).

I would reverse.[1]

In the host of selective service cases which have been passed upon by the courts in recent years, this becomes the *only* decision which holds that a local draft board may justify by subsequent events postponement of a registrant's induction in lieu of granting him his rightful statutory deferment. The concomitant denial of due process flowing from the registrant's loss of his right to a personal appearance and an administrative appeal not only is contrary to the law of this circuit but the law everywhere else. See, e. g., United States v. Rundle, 413 F.2d 329, 332–334 (8 Cir. 1969); Davis v. United States, 410 F.2d 89, 95–96 (8 Cir. 1969); United States ex rel. Vacca v. Commanding Officer, Ft. Hamilton, 446 F.2d 1079, 1083 (2 Cir. 1971); United States v. Feldman, 437 F.2d 888, 889 (9 Cir. 1971); United States v. Zablen, 436 F.2d 1075 (9 Cir. 1971); Magaro v. Cassidy, 426 F.2d 137, 141–142 (5 Cir. 1970); Nestor v. Hershey, 138 U.S.App.D.C. 73, 425 F.2d 504, 523–526 (1969); United States v. Turner, 421 F.2d 1251, 1252–1253, 1256 (3 Cir. 1970); United States v. Freeman, 388 F.2d 246, 249–250 (7 Cir. 1967), rehearing denied en banc (1968); Miller v. United States, 338 F.2d 973, 976–977 (9 Cir. 1967); Stain v. United States, 235 F.2d 339, 343 (9 Cir. 1956); Olvera v. United States, 223 F.2d 880, 883–884 (5 Cir. 1955), overruled on other grounds, Robertson v. United States, 404 F.2d 1141 (5 Cir. 1968), reversed on other grounds, 417 F.2d 440 (5 Cir. 1969); United States v. Vincelli, 215 F.2d 210, 213 (2 Cir. 1954), rehearing denied 216 F.2d 681; United States ex rel. Berman v. Craig, 207 F.2d 888, 890–892 (3 Cir. 1953); United States ex rel. Mulford v. Commanding Officer, 338 F.Supp. 1120, 1124 (E.D.N.Y.1971); Waguespack v. Tarr, 317 F.Supp. 448, 451–452 (E.D.La.1970); Weppler v. Hershey, 308 F.Supp. 447, 448–449 (N.D.Ill.1969); Williams v. Hershey, 307 F.Supp. 409, 411–412 (W.D.Wis.1969); Turley v. Selective Service System, Local Board No. 134, 301 F.Supp. 845, 853–854 (C.D.Cal.1969). Cf. Mulloy v. United States, 398 U.S. 410, 416–418, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970); Simmons v. United States, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453 (1955); United States v. Bender, 469 F.2d 235, 239 n. 5 (8 Cir. 1972); United States v. Pickett, 460 F.2d 1255 (8 Cir. 1972); McLain v. Selective Service Local Board No. 47, 439 F.2d 737, 739 n. 3 (8 Cir. 1971); United States v. Kelly, 473 F.2d 1225, 1227–1228 (9 Cir. 1973); United States v. Fry, 203 F.2d 638 (2 Cir. 1953); United States v. Schmidt, 313 F.Supp. 456, 460 n. 2 (D.Minn.1970); United States v. Walsh, 279 F.Supp. 115, 121 (D.Mass. 1968).

1. There can be no question that the registrant sent a request for a II-S deferment to his local draft board upon his enrollment in Creighton University in the fall of 1969. Although Sheridan did not make this request by using the proper Selective Service System Form 109, the Board was aware of his desire for such a deferment in July of 1969. Thereafter the selective service file shows that the local board received a punch card from Creighton University, signed by Sheridan, in the· fall of 1969 certifying that he was duly enrolled and satisfactorily pursuing a full course of study. It was then readily obvious to any reasonable person that this young man was requesting a II-S deferment. For the Board to ignore Sheridan's request on the basis that he had not used the proper form was incredible. In

Vaughn v. United States, 404 F.2d 586, 591 (8 Cir. 1968), reversed on other grounds, 339 U.S. 526, 90 S.Ct. 2230, 26 L.Ed.2d 776 (1970), Judge Matthes wrote:

"We believe, however, that classification in accordance with the law should not rest upon technical considerations. Substance, not form, is the controlling factor."

The record is undisputed that Sheridan was entitled to a statutory II-S deferment in the fall of 1969. Breen v. Selective Service Local Board No. 16, 396 U.S. 460, 464–465, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970). Yet the Board wrongfully chose to continue his I-A classification and simply postpone his order of induction.

The majority finds that the Board's failure to grant Sheridan a II–S deferment in 1969 resulted in no prejudice to him. The "no prejudice" thesis is premised on the fact that Sheridan satisfactorily completed only nine hours of study his first year of enrollment at Creighton University and therefore his subsequent enrollment in the fall of 1970 at St. Scholastica College would have no longer entitled him to a II–S classification.[2] It is then reasoned that the Board would have had to reclassify Sheridan as I–A in any event and therefore the Board's "procedural irregularity" in failing to properly grant his lawful deferment in 1969 was a mere technicality resulting in no prejudice. As indicated, the main difficulty with such hindsight reasoning is that it is contrary to the overwhelming case law in the country. Numerous courts have held that an unlawful denial to reopen is not mooted because a registrant is no longer a student or otherwise fails to qualify for a student deferment. See, e.g., United States v. Rundle, 413 F.2d 329 (8 Cir. 1969); Nestor v. Hershey, 425 F.2d 504, 523–526 (D.C.Cir.1969); United States ex rel. Mulford v. Commanding Officer, 338 F.Supp. 1120, 1124 (E.D.N. Y.1971); Waguespack v. Tarr, 317 F. Supp. 448, 451–452 (E.D.La.1970); Weppler v. Hershey, 308 F.Supp. 447, 448–449 (N.D.Ill.1969); Williams v. Hershey, 307 F.Supp. 409, 411–412 (W. D.Wis.1969); Turley v. Selective Service System, Local Board No. 134, 301 F. Supp. 845, 853–854 (C.D.Cal.1969). Cf. United States v. Zablen, 436 F.2d 1075 (9 Cir. 1971). Contra Robinson v. Hershey, 2 SSLR 3191 (7 Cir. 1969). Subsequent events should never determine the loss of substantive rights flowing from a denial of procedural fair dealing. Such reasoning constitutes a dangerous precedent.

In Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970), the Supreme Court emphasized the importance of the procedural safeguards incorporated in the reopening of a registrant's classification. The petitioner in *Mulloy* presented a credible claim for a conscientious objector exemption to his Local Board, but the Board refused to reopen his classification although they permitted him to appear. The Court said:

> "Because of the narrowly limited scope of judicial review available to a registrant, *the opportunity for full administrative review is indispensable to the fair operation of the Selective Service System.* Where a prima facie case for reclassification has been made, a board cannot deprive the registrant of such review by simply refusing to reopen his file. . . .

> . . . . . .

> ". . . *The board could not deprive the petitioner of the procedural protections attending reopening by making an evaluative determination of his claim while purportedly declining to reopen his classification.*" (My emphasis.) *Id.* at 416–418, 90 S.Ct. at 1771.

In an earlier case, Simmons v. United States, 348 U.S. 397, 75 S.Ct. 397, 99 L. Ed. 453 (1955), the Supreme Court reversed the conviction of a registrant claiming a conscientious objector exemption because the Department of Justice failed to furnish him with a fair resume of adverse information in an FBI report as required by the Universal Training and Service Act. The government urged that no prejudice was shown, but the Court stated:

> "The Government's argument that no prejudice was shown and none resulted can be readily disposed of.

2. There is some evidence that only nine hours were transferred from Creighton to St. Scholastica because only grades of C or above could be transferred. Furthermore, because the Board failed to reopen the case and Sheridan was not permitted to appear and present evidence, it was never established that Sheridan could not

complete his studies in the remaining three years. Although Sheridan did not fulfill the requisite 25% of his college credits in his freshman year, it surely was within the Board's discretion to consider these additional factors before classifying him I–A.

. . . This is not an incidental infringement of technical rights. Petitioner has been deprived of the fair hearing required by the Act, a fundamental safeguard, and he need not specify the precise manner in which he would have used this right—and how such use would have aided his cause—in order to complain of the deprivation." *Id.* at 405–406, 75 S.Ct. at 402.

The cases relied on by the district court and followed by the majority, United States v. Chaudron, 425 F.2d 605 (8 Cir. 1970), cert. denied, 400 U.S. 852, 91 S.Ct. 93, 27 L.Ed.2d 89; United States v. Spiro, 394 F.2d 159 (3 Cir. 1967), cert. denied, 390 U.S. 956 (1968); Bradshaw v. United States, 242 F.2d 180 (10 Cir. 1957); and Rowton v. United States, 229 F.2d 421 (6 Cir. 1956), are factually inapposite. They *do not* involve (1) the failure of the board to grant a statutory II–S deferment to which the registrant was entitled as a matter of law; (2) the denial of the lawful right to a reopening and personal appearance before the board; and (3) the denial of the benefit of the regulations which allow a registrant the right of appeal to the state appeal board and possibly the Presidential Appeal Board.

The "substantial prejudice" alleged in *Chaudron* was (1) that the local board's clerk, instead of the board itself, sent the conscientious objector civilian work choices to Chaudron, even though the board subsequently ratified the selection; (2) that the board failed to reconsider Chaudron's request for work assignment; (3) that since the local board without notification changed its number from 100 to 220, the board lacked jurisdiction; (4) that two of the four board members lived outside the board area; and (5) that the board was allowed to supplement the clerk's account of a board meeting to include a reference to their direction to issue an Order to Report for Civilian Work and Statement of Employer form. The *Chaudron* court concluded that the petitioner's conviction was "attributable to an unbending and adamant refusal to accept any civilian employment except that of his own choosing." United States v. Chaudron, 425 F.2d at 612. In *Spiro* the petitioner complained that the board failed (1) to notify him that an appeal agent was available to advise him (this was posted on a bulletin board), (2) to apprise him that the appeal agent had ten days within which to request either reconsideration by the board or a Presidential appeal, and (3) to wait ten days after sending the notice of classification before issuing an induction order. In both *Bradshaw* and *Rowton* the claimants urged that they were prejudiced by the failure to post the names and addresses of advisors to applicants—the *Rowton* opinion described this as reliance on a "bare technicality." Rowton v. United States, 229 F.2d at 422. Compare Steele v. United States, 240 F.2d 142 (1 Cir. 1956). None of these decisions approach the prejudicial magnitude fraught in a postponement of a lawful deferment and the ensuing denial of a personal appearance and an administrative appeal.

The requirement of proof of prejudice, after the fact, is ill-conceived. A registrant may change his whole course of life because a board erroneously postpones an induction rather than grant a proper deferment. A registrant wrongfully denied deferment might voluntarily terminate his schooling in anticipation of an early induction. A registrant should not have the negative burden to show that the harm could not have possibly occurred if the board had performed its lawful duty. It becomes untenable to say that the government can hide behind the absence of proof where its own conduct has created the fertile ground for prejudice to occur.[3]

---

3. In United States v. Rundle, 413 F.2d at 332 (J. Mehaffy dissenting), in reversing the judgment, we said:

"However, in view of the fact that the evidence conclusively shows that at the time Rundle received his induction order in May, he was pursuing his education and upon certification of that fact to the board under 32 C.F.R. § 1622.15(b) and the statute 50 U.S.C.

Sheridan is now branded as a felon for the rest of his life. As such his prospects as a useful citizen in a competitive society are remarkably diminished. It can be argued that his own conduct led him to this ignominious future, on the other hand, it is equally plausible that the callous and illegal action of his draft board was more instrumental. If Sheridan had been given his II–S deferment in 1969 without the threat of impending induction, perhaps he would have been motivated to earn better grades. There should be nothing novel in the realization that a prospect of impending service in the armed forces often lessens a young person's enthusiasm for his present course of study. If Sheridan had been given a personal appearance, perhaps the local board or the appeal board would have been persuaded as to his sincerity in changing his school major and would have allowed him, in their discretion, to at least finish the current school term before again reviewing his classification. Perhaps the local board would have realized that since Sheridan was not actually classified II–S when he was enrolled at Creighton in 1969, that the first year to count for credit hours under the selective service regulation was 1970 and that he thus would have then qualified for a II–S deferment. Perhaps, Sheridan, if given a personal appearance and immediately informed of the Board's intent to reclassify him, would have chosen to pursue instead some occupational deferment. Perhaps he would have immediately realized the necessity of seeking a conscientious objector classification *before* an induc-

tion order was mailed. See generally Nestor v. Hershey, 425 F.2d at 524–525. Who can say? It is all a matter of speculation—but this points up the difficulty in placing the negative burden on a registrant, after the fact, to show that the Board's unlawful acts constituted prejudice. It has often been said, but the frailities of human nature seem to require its constant repetition, that it is fundamental to the preservation of a free society that government in its relationship with individual citizens must be strictly held to standards of lawful conduct. To sell short this concept on a hindsight rationalization of "no prejudice" arising from subsequent events strikes hard, in my judgment, at the basic concepts of constitutional justice.

App. § 456(i)(2) the board was nonetheless required to reopen and reconsider his I-A classification and cancel his induction order. 32 C.F.R. § 1625.14. See United States ex rel. Berman v. Craig, 207 F.2d at 890 (3 Cir. 1953). To hold otherwise would be to permit a board to disregard a mandatory duty to reopen by simply delaying consideration until the registrant's status has changed sufficiently so that he is no longer entitled to the requested reclassification. *Indeed, a board's delay might in itself cause a change in a registrant's status.*

The local board's delay, coupled with both its evident reluctance to grant a II–S classification and the outstanding induction order might well have caused Rundle to conclude that registration for summer school was a futile act. For the same reason, Rundle's subsequent withdrawal of his request for a II–S deferment on June 23 and his application then to be consideration for a I-A-O status cannot affect the board's mandatory duty under the regulations to reopen and consider anew his classification." (My emphasis.)